## THE RICHMOND & DANVILLE R. R. CO., N. C. DIVISION, *v.* CURTIS H. BROGDEN, Governor, &c., and others.

The General Assembly has no right to confer upon the Governor, Treasurer and Auditor, the power to value the tangible, real and personal property of a Railroad corporation; for such power is vested by the Constitution in the Township Board of Trustees alone, and cannot be taken from them.

The franchise of a corporation is property; and the franchise of a railroad corporation should be assessed for taxation separate and apart from its other property, and without taking such other property into consideration.

A dividend of fifteen or twenty per cent. paid in Confederate money, is not such a dividend as was contemplated in the charter of the N. C. Railroad Company, in exempting the real estate of the company from taxation, until the dividend of profits of said company shall exceed six *per cent.*; nor is the six *per cent.* rent received from the Richmond & Danville Railroad Company, such a dividend of profits.

(*Wil, Col, & Aug. Railroad Co.* v. *Comm'rs of Brunswick*, 72 N. C. Rep. 10; *Richmond & Danville Railroad Co. v. Comm'rs of Orange*, at this term, cited and approved.)

CIVIL ACTION, for an *Injunction*, heard before *Watts*, J., at June Term, 1875, of WAKE Superior Court.

The allegations of the complaint are substantially as follows: The plaintiff is a corporation, existing under the laws of the State of Virginia, owning and controlling railroad lines in that State, and in North Carolina.

The North Carolina Railroad Company, by virtue of authority conferred by its charter, leased its property and franchises to the plaintiff for thirty years, and under the provisions of said lease, it is the duty of the plaintiff to pay all taxes accrued on the North Carolina Railroad Company, not to exceed ten thousand dollars in the aggregate.

The defendant, Curtis H. Brogden, is Governor of the State of North Carolina, the defendant, John Reilly, is Auditor, and the defendant, David A. Jenkins, is Treasuaer of said

State, having been incumbents of their respective office since the first day of January, 1873.

By an act entitled " An Act to provide for the collection of taxes by the State and several counties of the State on property, polls and income, chap. 115, laws 1872–'73, re-enacted by sec. 10, chap. 133, acts 1873, it was made the duty of the President of the plaintiff corporation, to give in the value of the franchise of the N. C. Railroad Company, on the day fixed by said act, for giving in taxable property to the Treasurer of the State, and the same to be assessed by the Treasurer, the Auditor and the Governor of the State, and their valuation to be returned to the County Commissioners of the counties in which any part of said road lies.  And it is provided by said act, that the tax upon such franchise, so valued, shall be the same as upon property of equal value; and that the tax collected in each county and township shall be in proportion to the length of such road lying in such county or township respectfully ; and such taxes shall be collected in the same manner as other taxes are required by law to be collected, and that the rolling stock of such company shall be valued with the franchise.

The President of the plaintiff corporation, in accordance with the above act, gave in to the Treasurer of the State a list of all the property, distinguishing real from personal property, including rolling stock of the N. C. R. R. Co., in the manner and form required by said Treasurer, affixing the value to each item of property.  The total real estate, including right of way, turn-outs, bridges, depots, &c., was given in at $1,530,579.12, and the total personal property, including rolling stock, tools, &c., at $422,262.05.  But the President of the plaintiff corporation *protested* in giving such lists :

1. That no tax could be lawfully levied on any of the real estate of the company, its workshops, right of way, &c.

2. That no tax could be levied lawfully on the franchise,

separate from the said property, and that the franchise, without the real estate, is valueless.

By chapter 32, sec. 5, of an act of the General Assembly, enacted in 1854–'55, entitled "An act for the completion of the North Carolina Railroad," which was duly accepted and is a part of the charter of said company. It is enacted "that all real estate held by said company, for right of way, for station places of whatsoever kind, and for workshop location, shall be exempt from taxation until the dividends of profits of said company shall exceed six per centum per annum," and that the contract so made between the State and the corporation plaintiff cannot be violated by the State.

The dividends of profits of the North Carolina Railroad Company have never exceeded six per centum per annum.

By the terms of the lease from the said company to the plaintiff, the plaintiff agrees to pay said company 6½ per centum per annum on its capital stock. Of this amount the North Carolina Railroad Company uses more than one-half per cent. in payment of interest, creating a sinking fund, and other necessary expenses.

The defendants insist, that in consequence of the payment of 6½ per centum per annum by the plaintiff on the capital stock of said company under the lease aforesaid, they have a right, and are legally bound, to estimate the value of said real estate in assessing the value of the franchise, and have accordingly, in the year 1872–'73, valued the franchise in an unlawful manner, much more than they would have valued the same if the real estate had not been included.

The corporation plaintiff paid the taxes assessed for the year 1872, under protest that the amount was excessive and would be demanded back, and also paid the taxes for 1873 in the same manner.

The plaintiff has petitioned the defendants to revise their assessments of the valuation of said franchise made in 1872 and 1873, and to assess the valuation without reference to the

real estate aforesaid, but they have refused to do so, and avow their intention to include said real estate in the assessment of 1874, and continually thereafter.

The complaint demands judgment:

I. That the defendants be restrained by injunction, especially until the hearing, and thereafter perpetually from including the real estate in the valuation of the franchise of the North Carolina Railroad Company, or to any degree enhancing the valuation of said franchise by reason of its possessing real estate for right of way, for station places of whatever kind, and for workshop location until the dividends of profits of said company shall exceed six per centum per annum.

II. That defendants be restrained by injunction, specially until the hearing, and perpetually thereafter, from assessing the valuation of the franchise of said North Carolina Railroad Company.

III. That a peremptory *mandamus* issue to the defendants, commanding them to revise the valuation of the franchise of said company, made in the year 1872, and likewise the valuation made in 1873, and to assess said valuation without reference to the possession by said company of any real estate, right of way, for station places of whatever kind, and for workshop location.

Upon motion before *Henry J.* at Chambers in Wake county, September 19th, 1874, a restraining order was issued to the defendants and they were ordered to show cause at the next rule day why the relief demanded by the plaintiff should not be granted.

At Fall Term, 1874, the defendants filed an answer to which the plaintiff demurred.

1. Because the admissions therein contained establish the cause of action stated in the complaint.

2. Because the said answer does not deny any material allegation stated in the complaint.

Upon the hearing of the cause the demurrer was sustained

and the court rendered judgment in accordance with the prayer of the complaint. The defendants appealed.

*Attorney General Hargrove* and *Smith & Strong,* for the appellants.

*Battle, Battle & Mordecai,* contra.

Settle J. It is decided in the *Wilmington, Columbia & Augusta Railroad Company* v. *The Board of Commissioners of Brunswick county,* 74 N. C. Rep. 10, and in the *Richmond & Danville Railroad Company* v. *The Board of Commissioners of Orange county,* at this term, that the General Assembly has no right to confer on the Governor, Treasurer and Auditor the power to value the tangible real and personal property of a Railroad Company, for that such power is by the Constitution vested in the township trustees alone, and cannot be taken from them. In view of the decisions, the learned counsel of the defendants, admits that the question intended to be presented when this action was brought cannot now arise.

Nor can it be seriously contended that a dividend of fifteen or twenty per cent., paid in Confederate money in 1863–'64, was such a dividend as is contemplated by the provision exempting the real estate of the Company from taxation until the dividends of profits of said Company shall exceed six per centum *per annum.* Nor can it be maintained, because the Richmond & Danville Railroad Company pays to the North Carolina Railroad Company as rent, six and a half per cent. per annum upon their capital stock, that that is a dividend exceeding six per cent. in contemplation of the charter, for it is admitted that the North Carolina Railroad Company uses one half per cent. and more, in payment of interest, in creating a sinking fund and for other necessary expenses.

Now as to the power of taxing the franchise.

Mr. Justice Davis in delivering the opinion of the court in

*Wilmington Railroad* v. *Reid*, 13 Wall. 264, says : " Nothing is better settled than that the franchise of a private corporation, which in its application to a railroad is the privilege of running it and taking fare and freight, is property, and of the most valuable kind, as it cannot be taken for public use even, without compensation. It is true it is not the same sort of property as the rolling stock, road bed, and depot grounds, but it is equally with them, covered by the general term " the property of the Company," and therefore, equally within the protection of the charter." The exemption in the charter of the Wilmington Railroad is larger than in the charter now under consideration, the one extends to *all the property* of the Company, whereas the other only exempts the *real estate* held by said Company for " right of way for station places of whatever kind, and for workshop location ;" but leaves the franchise and personal property of the corporation subject to taxation.

Something was said upon the argument as to the manner in which the franchise should be valued. Of course the franchise of running a railroad between large cities and through a rich country would be more valuable than than that of a short road between unimportant points. The franchise of running ferry boats between New York and Jersey City is more valuable than that of running them over the Yadkin river. The value of a franchise depends upon divers considerations. And while the charter of the North Carolina Railroad Company protects from taxation the real estate of the Company until a certain event shall come to pass, yet all the privileges conferred by the charter, such as holding valuable real estate free from taxation, &c., may be taken into consideration in estimating the value of the franchise. But in 1874, the Legislature passed an act amending the charter of the North Carolina Railroad Company, and the Company accepted the amendment. And now Mr. Smith contends that this amendment makes, in substance, a new incorporation, and places the char-

ter under the control of the General Assembly, by virtue of the Constitution adopted in 1868. " Corporations may be formed under general laws, but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the Legislature, the object of the corporations cannot be obtained under general laws. All general laws and special acts passed pursuant to this section, may be altered from time to time, or repealed." Const., Art. 8, Sec. 1.

The words of the Constitution confines the power of the General Assembly to alter or repeal laws, in the nature of contracts, to such laws as shall be passed after the adoption of the Constitution, and we see no reason for construing them differently from the plain import. The amendment which is said to have effected this great change does not profess to repeal the clause of the charter which exempts the real estate of the Company from taxation, and indeed, has no allusion whatever to the subject of taxation.

So the defendants must maintain that the slightest amendment to an old charter, not professing to alter or in any manner interfere with its most important provisions, works an entire change and puts the whole charter at the will of the Legislature. This cannot be so. In accepting the amendment the Company did not waive any of its privileges under its charter, save such as are embraced by the amendment.

The judgment of the Superior Court is affirmed.

PER CURIAM.                                    Judgment affirmed.