NORTH CAROLINA RAILROAD COMPANY v. COMMISSIONERS OF ALAMANCE.

*Injunction—Collection of arrears of taxes—Constitutionality of Statute.*

1. An injunction *pendente lite*, in an action to test the constitutionality of chapter 158, acts 1879, will not be granted to restrain proceedings under the provisions of the act, except to restrain the *collection of the tax*, until the merits of the controversy can be determined. The judicial authority should be reluctant to interfere and obstruct the execution of the expressed legislative will, on the ground that the end to be accomplished by the use of the prescribed means is unwarranted by the constitution, until some substantial right of the complaining party is about to be injuriously affected.

2. A law to provide for the collection of taxes for past years is not unconstitutional ; and the right of the legislature to pass such law is not affected by the lapse of time.

3. Nor does such law (if the taxes imposed in the years mentioned were *then* uniform and equal) violate the provisions of article five, section three, of the constitution in regard to uniformity of taxation.

4. The general assembly, since the abrogation of article seven, section six, of the constitution of '68, can constitute other agencies to perform the duties therein imposed upon the township board of trustees.

5. It is no defence to a legal assessment and claim of taxes, that taxes under an illegal or irregular assessment have been paid.

(*R. R. Co.* v. *Com'rs of Brunswick,* 72 N. C., 10 ; *Bridge Co.* v. *Com'rs of
New Hanover, Id ,* 15 ; *R R. Co.* v. *Brogden,* 74 N. C., 707 ; *R. R. Co.*
v. *Com'rs of Orange, Id.,* 506 ; *R. R Co.* v. *Com'rs of Alamance,* 76 N.
C., 212 ; and 77 N. C., 4 ; *King* v. *W. & W. R. R. Co.,* 66 N. C., 277 ;
*Hinton* v. *Hinton,* Phil., 410.)

INJUNCTION heard at Fall Term, 1879, of ALAMANCE Supe-
rior Court, before *McKoy, J.*

The plaintiff, the N. C. and R. & D. railroad companies,
applied for an injunction, pending the action, to restrain
the defendant commissioners from proceeding under the
act of 1879, ch. 158, to assess and collect the taxes alleged
to be due from plaintiff. The application was refused and
the plaintiff appealed.

*Messrs. Graham & Ruffin, D. G. Fowle and J. E. Boyd,* for
plaintiff.

*Messrs. Scott & Caldwell* and *E. S. Parker,* for defendants.

SMITH, C. J. In the act of March 13, 1869, to provide for
the collection of revenue, is the following clause :

"The value of the franchise of any railroad, canal, turn-
pike, plank road, navigation and banking company, shall
be given by the president or chief officer of the said several
corporations on the day fixed by this act for the giving in
of taxable property, to the treasurer of the state, and shall
be assessed and valued by the said treasurer, the auditor
and governor of the state, and their valuation shall be re-
turned to the county commissioners of any county in which
any part of said road, or canals, or navigation works shall
be, and the tax upon such franchise, so valued, shall be the
same as upon property of equal value, and the tax collected
in each county and township shall be in proportion to the
length of such road, canal or works, lying in such county
or township respectively, and such taxes shall be collected
as other taxes are by law required to be. The rolling stock

of every railroad company, and the vessels employed by any canal or navigation company, on its canal or works shall be valued with the franchise." Acts of 1868-'69, ch. 74, § 13. A similar provision is found in the successive annual acts for the collection of revenue to, and inclusive of, that of February 14, 1874.

Under the provisions of the law, as interpreted and acted upon by the companies and the state board of valuation, the North Carolina railroad company made returns of its various kinds of rolling stock, fire wood, money on hand and other personal property, and of the valuation of each, which were assessed by the board, and the proportionate parts of the aggregate value distributed among the several counties traversed by the road and directed by the act. The returns for the years 1873 and 1874 contain additionally a statement in detail of the length of the track with its turn-outs, bridges and depot buildings in the several counties through which it runs, and the valuation of the property in each, and this is enjoined in positive terms by the amendment made to a similar section in the act of March 17, 1875. Acts of 1874-'75, ch. 184, § 11.

The construction of this clause came before the court at January term, 1875, and it was declared that under the constitution (Art. VII, § 6,) the township board of trustees alone must "assess the taxable property of their townships" respectively, and no authority could be given by the legislature to the state board to make such assessment, and that the franchise mentioned in the statute should be valued for purposes of taxation apart from the property used in its enjoyment, and if this was included in the estimate of the state board, and the value of the franchise thereby enhanced, their action was based on an erroneous principle and the company was "entitled in a proper case to relief from the consequent tax." The court also held that the payment of the tax upon such illegal assessment *was no defence*

against a tax legally levied by the county authorities under the general law. *W. C. & A. R. R.* v. *Com'rs Brunswick,* 72 N. C., 10 ; *Bridge Co.* v. *Com'rs New Hanover, Ibid,* 15. See also *R. & D. R. R. Co.* v. *Brogden,* 74 N. C., 707 to the same effect.

In the *R. & R. R. Co.* v. *Com'rs of Orange,* 74 N. C., 506, it was decided that under the charter of the North Carolina railroad company to whose obligations and rights the plaintiff as lessee had succeeded, the real estate held for right of way, for station places of whatever kind and for workshop location, was exempt from taxation, as the dividend of profits of the former company had not exceeded six per centum per annum, and the same proposition is reiterated in *R. & D. R. R. Co.* v. *Com'rs of Alamance,* 76 N. C., 212.

The two companies having brought their suit against the commissioners for the county taxes exacted under the assessment of the state board and paid under protest, recovered and have been repaid the same, and it was declared that every counter-claim for taxes, which under a legal assessment ought to have been paid by the plaintiffs was wholly inadmissible. *N. C. and R. & D. R. R. Co.* v. *Com'rs of Alamance,* 77 N. C., 4.

In consequence of these decisions, the general assembly, by the act of February 23, 1877, refunded to the Richmond and Danville railroad company the state taxes levied upon the exempt real estate, the amount of which was ascertained and determined by the officers constituting the state board, according to its directions. Private acts of 1876–'77, ch. 35.

This is a brief history of the antecedent facts which led to the passage of the act of March 8, 1879, to arrest the execution of whose provisions the present action has been instituted. Act of 1879, ch. 158.

The act recites that the two companies "have failed to pay their proper state and county taxes upon a large amount of real and personal property in the county of Alamance," within the years from 1869 to 1876 inclusive, on account of

their failure to list the same or on account of illegal assessments and consequent litigations and the "said tax lists are erroneous and large amounts which ought to have been assessed in said corporations under the laws of those respective years are still unlisted and uncollected," and proceeds to provide a remedy, by directing the authorities of the county, charged with the duty of listing, assessing and revising the taxes for the current year "to revise and correct the tax lists of said corporations during the specified interval" so that said tax lists shall speak the truth, as if the lists and assessments had been made under and in accordance with the laws of the said respective years. The subsequent sections of the act direct the manner in which this shall be done, prescribes the rate of taxation to be that imposed under the assessment for the successive years for which the tax lists are to be revised and corrected, and allows, in reduction of the sums ascertained to be due for any one year, whatever amount either company may have heretofore paid for that year.

The substance of the enactment and its professed object are to have the taxable property of the companies re-assessed for the series of years mentioned, and the taxes thereon, which ought to have been levied and collected under the laws applicable thereto, now levied and collected, first deducting what may have been already paid under the illegal and erroneous assessment by the state board. The defendants were engaged in the due execution of the provisions of the law when the restraining order issued, and their further proceedings were suspended until the interlocutory judgment denying the application for an injunction *pendente lite*, which the appeal brings up for review. The question presented, then, is this : Is the enactment so palpably unconstitutional as to call for our interference at this preliminary stage, in arresting all action in the enforcement of its directions ? For unless the legislation is plainly in conflict with

the constitution, the court will not so declare and especially in the revision of an interlocutory order made before the final hearing of the cause. " The power of the courts to declare statutes unconstitutional," says Dick, J., "is a high prerogative and ought to be exercised with great caution, and they should not declare a statute void unless the *nullity and invalidity of the act are placed, in their judgment, beyond reasonable doubt.* A reasonable doubt must be solved in favor of the legislative action and the act be sustained." *King* v. *W. & W. R. R. Co.*, 66 N. C., 177, with reference to Cooley Const. Lim., 102. In this connection it may be remarked that when the law-making power directs an act to be done in a specified time and manner, the judicial authority should be reluctant to interpose and obstruct the execution of the expressed legislative will, on the ground that the end to be accomplished, by the use of the prescribed means, is unwarranted by the constitution, until some substantial right of the complaining party is to be injuriously affected; since if the alleged repugnancy exists, no harm can come from non-interference, and if it does not, the process of the court will have been used to defeat a valid act of legislation. In the present case the interests of the plaintiffs would be amply protected by stopping the *collection of the tax*, after its amount was ascertained, until the merits of the controversy could be determined ; and if then adjudged illegal, by a perpetual injunction. This would seem to be the full measure of the plaintiffs' relief, upon the averments contained in their complaint. It might turn out after the assessment is made, and if the plaintiffs' allegations should be correct it would so appear, that upon the adjustment provided in the act, nothing was due for omitted taxes, and there was no necessity for the suit. But as no injunction was granted and the machinery of the law left unobstructed, no inconvenience results from the action of the court.

The argument for the plaintiffs places their claim to be relieved from the provisions of the enactment upon the following grounds:

1. The time for collecting the taxes under the pre-existing law having expired, the present enactment is retroactive and at variance with the constitution.

2. The taxable property proposed to be assessed has already paid the tax levies upon it, and the proceeding will result in charging it with a double tax.

3. The right to claim and collect the taxes is lost by the lapse of time and cannot be restored by legislation.

4. The county and township assessors appointed under the first section of the act of March 13, 1879, cannot be substituted in place of the township board of trustees as constituted before the recent constitutional amendments.

5. There will be a want of uniformity in the proposed tax.

6. The suits of the plaintiffs against the defendants, the county commissioners, and the results therein determined are an estoppel in the way of the assertion of the present claim.

We are thus called on before the cause is in a condition to be tried upon its merits, to examine and pass upon the effect of *ex parte* testimony and determine provisionally the facts upon which rests the application for the exercise of the restraining power of the court. We are asked to pronounce the statute void and thus virtually to decide the cause. While in order to the proper exercise of the power we must pass upon the evidence, we only do so, so far as to see that no irreparable injury is sustained pending the litigation, and do not intend by anticipation to usurp the functions of the jury. We shall not, therefore, examine with the same fullness of detail the several propositions made and combatted in the argument, as would be necessary if the case was an appeal from the judgment on the final hearing.

The retrospective features of the act are not fatal to its validity. It does not undertake to impose new burdens or additional liabilities upon the companies, but to pursue and charge the taxable property which they possessed and which has escaped its share of the common burdens. It seeks nothing more. No vested rights are invaded; no wrong done by the means employed to correct a common error, and prevent an unjust and unintended exemption. Remedial in its scope and operation, it undertakes to provide against the consequences of the omission and neglect of public agencies and to have now done what ought to have been done before. "The power of the legislature," says PEARSON, C. J., "to pass retro-active statutes affecting remedies is settled," and he declares the act of February 22, 1866, which gave widows, the wills of whose husbands had been admitted to probate since the first day of January, 1862, six months after the passage of the act to enter their dissent, to be valid, because "it affects the remedy and not the right of property." *Hinton* v. *Hinton*, Phil., 410. "A retrospective statute curing defects in legal proceedings" of which we have instances in our reports, "when they are in their nature irregularities only and do not extend to matters of jurisdiction is not void, on constitutional grounds, unless expressly forbidden. Of this class are the statutes to cure irregularities in the assessment of property for taxation and the levy of taxes thereon." Cooley Const. Lim., 371.

The state has a lien upon land for taxes actually levied and also for such as were properly put upon the land, but by reason of the neglect of the officers entrusted with the duty of assessing it, the land was omitted for a particular year." Blackwell Tax Titles, 163. "The legislative authority given to tax the property for the omitted years is not exhausted by the failure of the party or the assessor to place it on the roll, and such assessments are valid. Burroughs Taxation, § 93. There are numerous instances in our own

legislation where the time for the collection of unpaid taxes has been extended to those due for many years previous, for the indemnity and reimbursement of the collecting officer and the sureties on his official bond and their legal representatives, without question so far as we know as to the competency of the legislature to make the enactment. Thus by the act of January 11, 1877, authority was given for the collection of unpaid taxes due in 1872, and the three succeeding years, to such officers as had settled the public taxes, although under the general law the period allowed for doing so was limited to one year after the time of the required settlement. Acts 1876-'77, ch. 36. And by a subsequent amendment it was extended to the two succeeding years. Acts 1879, ch. 15. Of similar import is the act of February 8, 1879. Acts 1879, ch. 27. If a definite unpaid tax, collectible within less than two years after it is levied, may be enforced by legislative permission years afterwards, for the benefit of the collector and his sureties, it would seem that there could be no legal impediment to the state's compelling the payment of its own just demands against the delinquent tax-payer when they are ascertained in the mode prescribed by law.

The objection based upon the lapse of time is equally untenable. The tax as a specific debt does not become due until the taxable property is listed and valued, and a definite per centum affixed to such valuation. It could not therefore be sued for until this is done, nor enforced by distress, and hence no statutory bar is interposed by the delay. Nor does the state forfeit its rights by the inertness or neglect of its officers. "When property has not been assessed for taxation," says Bynum, J., in *N. C. R. R. Co.* v. *Com'rs of Alamance, supra,* "no taxes are due or recoverable."

We think it quite clear that the general assembly on the abrogation of section six, article seven, of the constitution, could constitute other agencies to perform the duties therein

imposed upon the township board of trustees, and no just cause of complaint is thereby furnished the plaintiffs. Nor is there any want of uniformity in enforcing the tax. The taxes imposed in the years mentioned were then uniform and equal, but uniformity in the payment has been broken by the escape of this property from the assessor's roll. The purpose and the operation of the law are to restore uniformity and make this, like other taxable property, contribute to the general fund.

The estoppel relied on is equally untenable. It is no defence to a legal assessment and claim of taxes, that taxes under an illegal or irregular assessment have been paid. It is so declared in the case last cited. But the act does in fact allow, in reduction of what may be found due, whatever sums the plaintiffs may have heretofore paid, and the adjustment is to be made and only the residue collected.

These considerations sufficiently show the correctness of the ruling of the court in refusing, before the cause is heard upon its merits, to arrest the execution of a law of even doubtful constitutionality, and to leave that point open for future determination. It must therefore be declared that there is no error in the ruling of the court, and this will be certified.

No error.                                        Affirmed.