*RICHMOND & DANVILLE RAILROAD COMPANY, Lessee, &c.,
v. COMMISSIONERS OF ALAMANCE.

### *Taxation—Railroads.*

1. Under the charter of the North Carolina railroad company, all real estate held by the company for right of way, for station places and workshop location, the machinery, tools and implements employed in the manufacture and repair of cars and engines, and office lots necessary for the use of its officers, are exempt from taxation until the dividends of profits shall exceed six per cent. per annum.

2. Where the court apportioned the valuation of the rolling stock of said company for taxation among the counties through which the road runs and assigned to one county a share proportionate to the length of the road therein ; *Held* no error.

3. The company is liable to be taxed upon money on hand and on deposit ; and not entitled to the credit claimed, of three-fourths of the taxes paid between 1869 and 1874; and is also liable upon shares of stock held by it for the years 1875 and 1876.

4. The act of assembly relating to the taxation of the property of this company and the method of assessment thereof by the state board, and the adjustment of the claims of the respective parties to this proceeding, discussed and pointed out by Smith, C. J.

(*R. R. Co.* v. *Com'rs*, 76 N. C., 212; *Makepeace Ex Parte*, 9 Ired., 91; *Bryan* v. *Lawrence*, 5 Jones, 337 ; *Latham* v. *Blakely*, 70 N. C., 368 ; *Bond* v. *Coke*, 71 N. C., 97 ; *Deal* v. *Palmer*, 72 N. C., 582; *Moore* v. *Vallentine*, 77 N. C., 188; *R. R. Co.* v. *Com'rs*, 72 N. C., 10 and 15, cited and approved.)

Proceeding to revise and correct the tax list heard at Fall Term, 1880, of Alamance Superior Court, before *Eure, J.*

The plaintiff company applied to the defendant commissioners for a correction of the tax lists and moved to strike therefrom the property mentioned in the opinion of this court ; the motion was refused and the plaintiff appealed to

---

*Ruffin J., did not sit on the hearing of this case.

the superior court, where the ruling was reversed and the defendants appealed to this court.

*Messrs. J. W. Graham, D. G. Fowle* and *J. E. Boyd,* for plaintiff.

*Messrs. E. S. Parker* and *Scott & Caldwell,* for defendants.

Smith, C. J.   The errors assigned in the record of the defendants' appeal are in the rulings of His Honor, directing to be stricken from the list of taxables for 1879, as not subject to taxation, the following property of the company : 1. The lot at the company shops, No. 7 and known as the office lot, valued at $2,000.   2. The machinery in the workshops at the same location at the value of $10,467.

I. The office lot consists of about two acres, and in the office used by the president, secretary and treasurer of the North Carolina railroad company, and by the directors when they meet, are kept the records of this company.   It is also used by the paymaster of the lessee, the Richmond and Danville railroad company, and for a post-office.   On the premises are two log buildings occupied by private persons as a store and warehouse ; the lot is included in the lease by the former to the latter .company.

II. The machinery declared exempt consists of one stationary engine encased in masonry within the building, and a second engine working outside, but by gearing connected with the operations inside.   It is cumbrous and heavy, some of it being fastened to the floor by screws or. nails, and part kept in position by its own weight.   This machinery is employed in the manufacture and repair of cars and engines and for other objects required in the running of the road, and is known as stationary machinery in contradistinction from the loose tools and implements used in operating it. Upon these facts found by the court, it is held that the lot and machinery become fixtures and are exempt, while the tools and implements used in operating, are not.

The amendment to the charter of the North Carolina railroad company made by the act of February 14th, 1855, provides that "all the real estate held by the company, for right of way, for station places of whatever kind, and for workshop location, shall be exempt from taxation until the dividends of profits of said company shall exceed six per centum per annum." It is manifest that the erection of workshops such as those put up on the lands of the company were in contemplation of the legislature when the act was passed, and a fair and reasonable construction of the language will take in the machinery and its accessories to be operated in the workshops. Of what use is the naked building or land without these fixtures and implements in accomplishing any benefit to the road, and why should the one and not the other, so intimately associated for a common purpose, be relieved from the burden? Accordingly the court say in construing this clause in the charter that "the term 'workshops' in reference to a great road like this, embraces foundries, engine houses, depots, machine shops, necessary offices, *all the usual appliances for the manufacture and repair of engines, and other stock required for the operation of the road.*" *R. & D. R. R. Co.* v. *Commissioners of Alamance*, 76 N. C., 212.

We do not enter into the niceties and technical distinctions in reference to what are and are not fixtures, and pass with the land in controversies between landlord and tenant, vendor and vendee, and others, but looking to the broader purpose of the exemption in inviting the investment of capital in a great self-supporting enterprise for the improvement of the state, in connection with the large contribution of the state itself to ensure its completion, we cannot separate the building from the machinery and necessary adjuncts within in giving effect to the provision for exemption, and in our opinion all are protected alike. The cases cited in the brief are but in confirmation of this view.

*Makepeace ex parte*, 9 Ired. 91 ; *Bryan* v. *Lawrence*, 5 Jones, 337 ; *Latham* v. *Blakely*, 70 N. C., 368 ; *Bond* v. *Coke*, 71 N. C., 97 ; *Deal* v. *Palmer*, 72 N. C., 582 ; *Moore* v. *Vallentine*, 77 N. C., 188.

The ruling of the court in so far as it exempts the stationary machinery in and at the workshops must be sustained and the exception thereto is inadmissible, but it is erroneous in not comprehending the implements necessary in their management and legally inseparable therefrom, for the purposes of taxation. We think the lot of land at the company shops known as the office lot, and used and occupied in the manner stated, notwithstanding the other uses to which the log houses and a part of the office buildings are put, are within the exempting clause, for these are but incidental to the main and predominant objects for which the lot is occupied.

The remaining exceptions to the judgment against the defendants for costs and the order for a correction of the tax lists consequent upon the rulings of the court are also untenable.

There is no error and the judgment of the court is affirmed.

No error.                    Modified and affirmed.

In a case between same parties:

SMITH, C. J. The errors assigned in the record of the defendants' appeal consists in the rulings of the court correcting the tax lists and exonerating the plaintiff corporation from liability for taxes upon certain property therein contained. The exceptions thereto we are required to review. The first and second exceptions which relate to the reduction of the valuation of the property in the revised lists for the successive years from 1869 to 1874 inclusive,

and the exemption of the stationary machinery at the work shops have already been considered and disposed of in deciding the plaintiffs' exceptions.

3 Ex. The court apportioned the valuation of the rolling stock among the counties which the railroad traverses and assigned to Alamance a share proportionate to the length of the road in that county: The defendants insist that this constantly moving property has its only *situs* for taxation in the county wherein its principal office or place of business is situated. Acts of 1868–'69, ch. 74, § 10. The statute defines the residence of a corporation, but provides if it "have separate places of business in more than one township it shall give in each the property and effects therein." But the same act which undertook to form a state board to assess the value of the franchise and of the rolling stock directs the valuation to be transmitted " to the county commissioners in which any part of said roads or canals, or navigation works shall be, and that the tax collected in each county and township shall be in proportion to the length of such road, canal or works lying in such county or township respectively." *Ibid.*, § 13. The purpose of the act under which the present proceedings are had is to restore the tax to which Alamance would have been entitled in the execution of the then existing law, had it not contravened the constitution in substituting certain state officers in place of the township board of trustees to whom is committed the duty of assessing the taxable property of their townships." Const., Art. 7, § 6 ; *W. C. & A. R. R. Co.* v. *Commissioners of Brunswick,* 72 N. C., 10. The exception must be overruled.

5 Ex. This exception has been considered in the plaintiff's appeal and the ruling of His Honor affirmed.

6 Ex. The defendants except to the striking from the lists made for the years from 1869 to 1876, inclusive, the money on hand and on deposit, as solvent credits surpassed

in amount by the indebtedness of the company and therefore non taxable. The proposition maintained in argument is undoubtedly correct, that a general deposit of money in a bank or banking institution subject to the check of the depositor constitutes the relation of creditor and debtor between the parties, and the deposit becomes a credit as truly as a loan of money for which any other form of security is taken. But this does not seem to be the sense in which the word is used in the statute and it must have the meaning there intended. The revenue act of 1869 (acts 1868–'69, ch. 74, § 12, par. 4) designates in the division of the subjects of taxation " money on hand or on deposit in any bank," while the next paragraph mentions " solvent credits owing by a party, whether owing by bond, note, bill of exchange, open account, or due and payable by any government," &c., with certain exceptions, and allows these to be offset and reduced by the amount the tax-payer may himself owe to others. This discrimination runs through the various revenue laws to the enactment of January 17th, 1872, (acts 1871–'72, ch. 49, § 9, par. 4) where the variation consists in adding to the clause the words " including therein all funds invested within thirty days before in United States bonds, national bank stock or other non-taxpaying whatsoever, with the intent to evade the payment of state, county or other taxes." But the distinction is still steadily maintained between "money in hand or on deposit" and " solvent credits " subject to reduction. We are therefore constrained to construe the act as imposing the tax on money on deposit as on other property and to be paid without abatement. This exception to the ruling of the court must therefore be sustained.

8 Ex. The claim to the taxes levied in the acts passed for the issue of what are known as special tax bonds is properly abandoned in view of the recent constitutional amendment.

9 Ex. This exception is also disposed of in the other appeal as too indefinite and speculative to be entertained.

10 Ex. The plaintiffs claimed and were allowed a credit for three-fourths of the taxes paid between 1869 and 1874, the proportion of the stock owned by the state. The act of 1879 prescribing the assessment for these years proceeds upon the idea of an assessment of all the taxable property of the plaintiff as if no taxes had been levied and collected, and from the annual amounts thus ascertained an annual deduction of all taxes actually paid, whether illegal or not, and the several differences, when the sum paid falls short of the sums due, become the true balances to be paid by the company. When the lists are revised and reformed according to the rulings of the court, they will contain the estate and property subject to taxation, and the taxes levied thereon will be abated under the directions of the act and no further. We are unabled to see upon what ground any further credits are to be admitted. The same result is reached by leaving out such property as was regularly and properly given in and taxed, and the taxes paid, and restricting the adjustment required by the law to other taxable property of the plaintiff. The court then erred in directing a further three-fourth deduction under the previous rulings by which only one-fourth of the taxable property of the company in value is entered upon the list. The exception must be sustained.

There is no error in the judgment for costs.

Error.                                        Modified.


In same case:

SMITH, C. J. The plaintiffs' appeal requires us to revise certain rulings of the court in relation to the subjects of taxation embraced in the act of March 8th, 1879, and the exceptions taken thereto, and these we proceed to examine:

1. The plaintiffs except to the refusal of the court to

strike from the tax list as made up, the personal property and money on hand for the assigned reason that they are included in the returns made by the officers of the company to the governor, treasurer and auditor, constituting the state board of assessment for certain purposes, as do the defendants object to the order reducing the assessed value thereof to one-fourth, the proportionate number of shares in the capital stock belonging to individual owners. These exceptions to the action of the court are so closely associated as to admit of, if not require, the consideration and disposition of both at one time.

The plaintiffs' objection rests upon an alleged presumption that all the property enumerated and valued in the returns is assessed and charged in the aggregate valuation of the board and should not be again taxed. The reduction to one-fourth, which represents the interest of stockholders other than the state, is in accordance with the directions in the successive revenue acts from 1869 to 1874 inclusive, which contain this provision: "In valuing the property of railroads and other corporations in which the state is a stockholder, the whole property shall be valued, but a part of the valuation shall be deducted proportionate to the interest of the state and the tax levied on the residue only. The tax so levied when paid by the corporation shall be charged by the corporation on the individual corporators only, and when any dividend shall be declared, the dividend to the state shall exceed that to the individual corporators by the amount of all taxes previously paid. Stocks or shares in incorporated companies shall not be taxed, when the property of the company is taxed." Acts 1868-'9, ch. 74, § 16, and subsequent revenue acts. As this was the method of procedure prescribed by the law in force during the period for which the assessments and levies directed by the act of 1879 are now to be made, the same rule was properly pursued under its positive directions. It is sug-

gested in the argument for the defendants that the exemption of three-fourths of the taxable property is within the inhibition of the constitution (Art. v., § 3,) which prescribes a uniform rule of taxation upon "all real and personal property according to its true value in money." We do not concur in this view, nor is the point presented in the exceptions in this record. This is but a mode of giving effect to section five, which exempts from taxation "property belonging to the state." The appellants' exception is not directed to the order reducing the total valuation of the property to one-fourth, but to the refusal to strike it all from the list, and to the finding (without evidence) the facts upon which the ruling is predicated. Those facts pertaining to the exception are these:

The state board included in the valuation of 1874, the franchise of the company and its rolling stock only in their estimate of $415,000, which sum was apportioned among the counties through which the railroad runs and according to its length in each. Alamance county contains $21\frac{18}{100}$ miles of the track and its share of the valuation was $37,297; the tax on this amount was levied in the county but its collection prevented by a perpetual injunction. In 1877, the share of the county in the valuation of the franchise by the state board was collected, but nothing on the rolling stock of the company. The court restricted the tax to the unpaid and untaxed rolling stock.

Upon these facts, not disputable upon the appeal, unless found without evidence, the ruling of the court is free from objection. Although the chief officers of the company for that and preceding years on the requirement of the board rendered an inventory and estimate of value of the entire corporate property, the act in express words limits the action of the board to an assessment "of the value of the franchise of every railroad, canal, turnpike, plankroad, navigation and banking company" whose president or chief

officer is required to return the same, and that "the rolling stock of any railroad company, and the vessels employed by any canal or navigation company on its canals or works shall be valued with the franchise." Acts 1873–'74, ch. 133, § 10. The presumption must prevail until removed by evidence to the contrary that the board pursued the directions of the law and valued only such property as it required them to put a value on. Not only do we not assent to the argument that there was no, or insufficient, proof to support the findings of fact, but upon the maxim, *omnia rite acta*, it be assumed in the absence of other evidence that the board discharged the official duties devolved on them by the law conformably to its provisions. It was forcibly argued against the inferences drawn from the demand of the board for a full statement of the corporate property that all was assessed, that the information was material, and may have been sought as an aid to a correct estimate of the value of the franchise as defined by the court in *W., C. & Aug. R. R. Co.* v. *Commissioners of Brunswick*, 72 N. C, 10, and *Wilmington Railway Bridge Co.* v. *Commissioners of New Hanover, Ibid.*, 15. This information indicates the extent of the business operations of the company and is serviceable in a greater or less degree in conducting the board to a just estimate of the value of the corporate privileges. But whatever may have been the object in seeking the information, we are not at liberty to suppose that the plain mandates of the statute were disregarded in making the estimates and the more especially as they fall so much short of the estimates of the officers of the company.

We are not at liberty to look into the returns made to the state board, the only proofs transmitted, except to see whether they furnish any reasonable evidence to support the findings of fact by His Honor. But if we were, the returns show that the rolling stock alone exceeds the valuation of the board, and during the years when the real estate

33

was also given in, one-fourth of their aggregate value as returned is in excess of the valuation of the board. We can not seek information out of the returns and it is clear to us that they warrant the findings of fact by the court. The exception must be overruled.

2 Ex. The plaintiffs further except to the retention in the tax lists from 1869 to 1876 inclusive, of one-fourth part of the shares of its own stock held by the corporation, for that, while so held, it ceased to be property subject to taxation. We are unable to find any good reason for the distinction between the individual and corporate ownership of the stock. It is as truly property in the hands of the company as in the hands of an individual, and of equal exchangeable value. It does not become extinct when the company acquires it, or it would cease to be assignable. It is part of the general property and equally liable to its part of the public burdens. But during the greater part of this interval and up to 1874, the stock held in a corporation was not liable to taxation under the law then in force, when the property of the corporation was taxed, (acts 1868-'69, ch. 74, § 12, par. 6) and this would seem to apply although part of corporate property is exempt. The exception must thus far be sustained, but the ruling is correct as to the years 1875—1876.

3 Ex. The appellants insist upon a credit for such amount of taxes collected in any one year as are in excess of two-thirds of one per cent. on the valuation. This exception is based upon no definite facts and is entirely contingent upon a further enquiry whether a portion of the tax was authorized by the general assembly, or was to pay debts contracted before the adoption of the constitution, and the amount of these was such. An opinion would therefore be speculative, and according to the practice will not be given. We can only say that there is no ground upon which we can be called on to uphold the exception.

4 Ex. The tools used in the workshops and necessary in

the operations therein conducted are exempt with the work-shops under the charter.  This exception is well taken for the reasons assigned in the opinion upon the defendants' appeal (and which it is needless to repeat) in the case involving the assessments for 1879.

The judgment of the court upon the exceptions presented and decided in both appeals will be certified to the superior court of Alamance to the end that the necessary corrections be made, and the taxes adjusted and collected under the, provisions of the act of 1879.

. Error.                                                    Modified.,