BANK (FIRST NATIONAL) v. CITY OF CHARLOTTE.

*Corporations—Stock Subscriber.*

Any fundamental change in the charter of a corporation relieves a non-assenting subscriber from liability upon his stock.

(*R. R. Co.* v. *Leach*, 4 Jones, 340, cited and approved.)

CIVIL ACTION tried at Fall Term, 1881, of MECKLENBURG Superior Court, before *Avery, J.*

The suit is brought by the First National Bank of Charlotte and the Atlantic, Tennessee and Ohio Railroad Company, plaintiffs, against the City of Charlotte, defendant, to recover the amount of coupons of certain bonds issued by the defendant city.   The facts are set out in the opinion of this court.   The defendant appealed [from the judgment of the court below.

*Messrs. Jones & Johnston,* for plaintiffs.

*Messrs. Wilson & Son* and *Dowd & Walker,* for defendant.

28

SMITH, C. J.   On February 15th, 1855, the general assembly passed the act incorporating the Atlantic, Tennessee and Ohio Railroad Company wherein are recited the provisions of an act of the legislature of Tennessee passed on February, 26th, 1853, authorizing the formation and organization of a company of the same name, which should have a corporate existence in the states of North Carolina, Tennessee, Virginia and Kentucky, for the purpose of establishing a communication by railroad between the waters of the Atlantic and the Ohio river, and passing through these states, which are re-enacted and a body corporate created in this state, with like powers and privileges as those conferred in the said recited act.   Acts 1854–'55, ch. 227.

This legislation contemplated the formation of a single company, sanctioned by the concurring and independent enactments of the other enumerated states through which the road was to run, so that while the corporations remained in law distinct and separate entities, there should be a union of interest, property and official management as in a single organization over the entire proposed line.

To this company and in furtherance of its declared object, the town of Charlotte (its name changed by chapter 7 of the Private Acts of 1865–'66 to that of the city of Charlotte) subscribed for four hundred shares of the capital stock and executed and delivered to the company forty of its bonds, each in the sum of $500, and bearing date July 1st, 1860, the coupons from which are the subject of the present action.  The subscription was authorized by law (Private Acts 1854–'55, ch. 263), on certain prescribed conditions, requiring the consent of the town commissioners and the concuring approval of a majority of the citizens, to be ascertained by submitting the matter to a popular vote at an election to be held and conducted as is therein directed, and contemporary with the issue of the bonds a tax was levied to meet the accruing interest represented in the coupons, and

the principal when it became due, and the bonds were held by the company prior and until the change produced by the act of February 23, 1861.    Private Acts 1860–'61., ch. 127.

. This enactment professing in its title to amend the former act of incorporation, and which if not an abrogation and substitution of a new company in its stead, effects such fundamental changes as are equivalent in their legal consequences, incorporates the stockholders resident in this state under the name of " The Atlantic, Tennessee and Ohio Rail-. road Company in North Carolina," dissolves the association produced by the joint and similar legislation of this and the state of Tennessee, with the expected co-operation of the other interested states.   It empowers the new organization to collect and use the money due from subscriptions to its predecessor, places it under the exclusive control of the North Carolina stockholders, and directs the fund to be expended in the construction of the road within this state, until its intersection with the line of the East Tennessee and Virginia Railroad, giving the profits to the new company, and requiring the gauge of its track to be " neither that of North Carolina nor South Carolina, but an independent gauge."

The 5th section is as follows: " The Atlantic, Tennessee and Ohio Railroad Company in North Carolina " shall have no authority to bind the faith and credit of the Atlantic, Tennesse and Ohio Railroad Company for the acts and contracts of the first named company, or any of the stockholders thereof be bound for the acts and contracts of the last named company, nor shall the last named company receive or collect any of the installments of subscriptions by stockholders in North Carclina, nor shall it receive or demand any profits arising from the said road in North Carolina.

Section 8 declares that when the road is completed to the East Tennessee and Virginia Railroad, the Atlantic, Tennessee and Ohio Railroad Company shall by such name be

an incorporated company in North Carolina, subject to the regulations and restrictions imposed in the act of February 23rd, 1861, except that said company shall hold its annual, as well as its occasional meetings, at any point in North Carolina, which the stockholders in general meeting, or the directors shall designate, as well as at Jonesboro, in Tennessee.

Section 7 continues this amendatory act in force until the proposed connection is formed, and section 10 provides that the acceptance of this amendatory act by a majority of the stockholders in this state, shall be deemed and taken as a valid acceptance of it by the Atlantic, Tennessee and Ohio Railroad company.

Under the directions of the act a meeting of the stockholders was held at Statesville April 8th, 1861, at which a majority of the stock being represented in person or by proxy, a resolution was adopted declaring that it is "accepted by the stockholders of the Atlantic, Tennessee and Ohio Railroad Company in North Carolina, and an organization effected under its provisions, and they agreed to adopt the gauge of the Western North Carolina Railroad. The bonds then passed into the hands of the new company, the same treasurer acting in that capacity for both, and were deposited for safe keeping in the plaintiff bank, and held by it for several years, until February, 1876, when they were hypothecated to the bank, to secure a debt of the railroad company due it for about $18,000, and since reduced to $12,000.

The record sets out a series of exceptions to the rulings of the court in rejecting evidence, the general scope of which was to show that the restrictions contained in the ordinance authorizing the issue of the corporate bonds in payment of the subscribed stock had been in several particulars disregarded, that the authorities of the town had given public notice of these irregularities and their refusal to pay or rec-

ognize the obligation as binding, and that these matters were well known to the bank when it took them as collateral security for the railroad debt.

But in the view we take of the case, it becomes unnecessary to pass upon the sufficiency of these exceptions, and we shall confine our attention to a single one, the determination of which must result in another trial, and if supported by facts must prove fatal to the plaintiff's recovery.

The defendant asked, and the request was denied, to submit two issues to the jury:

1. Did the town of Charlotte ever assent as a stockholder to the act of the general assembly ratified February 23rd, 1861, amending the charter of the Atlantic, Tennessee and Ohio Railroad Company?

2. Did said company ever deliver, or offer to deliver, any certificate of stock to the said town?

We have quoted largely from the amendatory act to show its fundamental and essential deviation from the plans and purposes of the original charter and their relations to each other. The first contemplates the construction and operation under one management of a continuous road passing from its eastern terminus through several other states to the Ohio river, and by the close association of companies chartered by each, practically and for all useful purposes consolidated into a single company. This great enterprise, so fruitful in promises of advantage to the sections of the states the road was to penetrate, and especially to the town of Charlotte, to which their rich and abundant agricultural and other products were to be brought, was to be and could only be accomplished by funds contributed by stockholders in all of these states.

To this organization and for these objects the defendant, with the approval of the tax-payers' vote, subscribed for its stock and issued its municipal obligations.

The amended charter lops off the road at its junction with

the East Tennessee and Virginia Railroad, and creates a distinct and separate company, and undertakes to appropriate the funds raised for the former to the construction and completion of a fragmentary part, which may never be extended farther.

The defendant proposed to show under the suggested issues, that while no certificate of stock in either road was ever issued to the defendant, it declined to assent to the change or to participate in the action of the stockholders who did accept, and has since ceased to have any connection with the new organization.

There was error in refusing issues which would have let in the defence, and hence we must consider the effect of this change in the character and scope of the amended charter:

If the defence is available against the one plaintiff, the rejected evidence becomes material to fix the other with notice and put the bank assignee upon the same footing with the assignor.

We are clearly of opinion that subscribers to the stock of the first company who have not assented, and do not assent to the amendatory statute and the modifications it makes in the original charter, are relieved from liability to the superseding railroad company. The authorities to this effect are numerous and decisive, and the principle is a clear deduction from the relations of the corporators to the corporation in which they hold stock. These relations involve a contract not only between them but *inter sese*, and among the separate corporations themselves whose inviolability is secured against interfering legislation from the states by the federal constitution. Some of the adjudicated cases we will briefly consider.

If a *corporation procure an alteration in its charter, by* which a new business is superadded to that originally contemplated, the non-assenting stock-subscribers are absolved

from further payments. *Sparrow* v. *E. and C. R. R. Co.,* 7 Ind., 369.

All authorities concur in stating the rule to be, says PAINE, J., that a radical fundamental change in the character of the enterprise releases the stock-subscriber who does not assent. *K. R. and R. I. R. R. Co.* v. *Marsh,* 17 Wis., 13.

So a change in the course and termini of a plank road by an act of legislation accepted by the company exonerates the non-assenting stockholder. *Plank Road* v. *Arndt,* 31 Penn. St. Rep., 317.

"It must be conceded," observes Mr. Justice STRONG, speaking for the court, "as a general rule, that a subscriber to the stock of a railroad company is released from obligation to pay his subscription by a fundamental alteration of the charter." *Nugent* v. *Supervisors,* 19 Wall., 241.

In *Supervisors of Fulton Co.* v. *Miss. and Wab. R. R. Co.,* 21 Ill., 338, the facts in which are not very unlike those before us, a railroad originally chartered to run from the Mississippi river to the eastern boundary of Illinois, was by an act of legislation severed in three divisions "for the purpose of facilitating and more effectually securing the early construction of the road," and the court uses this language, forcible and appropriate to the question before it: "When the vote of Fulton county was taken to subscribe stock, the charter provided for one continuous road across the state from the Mississippi on the west to the state line on the east, 230 miles in length, and traversing by far the most beautiful and fertile part of the state, an enterprise it must be confessed of great magnitude, and furnishing facilities for a vast and extended commerce and inter-communication with distant markets, an object well calculated to claim and receive the favorable regard of the people of a county lying in its track. This may be safely taken as one of the inducements for the subscription to its stock of the people of Fulton county. * * * As to Fulton county the enter-

prise originally contemplated has dwindled down to a mere local road, fifty miles in length, having no important termini, the stock in which, as appears by the record, would be of nominal value only.   We cannot but think in this view *that the alteration of the original charter by dividing this great road, was fundamental, and the stockholders released from their subscriptions."*   See also *H. and N. H. R. R. Co.* v. *Crosswell,* 5 Hill (N. Y.), 383.

The same doctrince is announced in *Railroad Co.* v. *Leach,* 4 Jones, 340, by BATTLE, J., who states the true ground for this exemption of the non-concurring stockholder to be, " that when called on to pay his subscription for the building of such a road, he may truly say, *non hæc in federa veni."*

The defendant called on, as it now is, after the lapse of many years to meet its assumed obligations, may well say that the subscription was made to construct a line of interior communication with the great grain producing states of the west, whose completion would have conferred important and lasting benefits upon the people and city of Charlotte.   Its successor or associate company is quite a different project, and with it we have entered into no contract, and are under no obligation.

There is error and must be a new trial, and it is so adjudged.

Error.                                        *Venire de novo.*