ATLANTIC, TENNESSEE & OHIO RAILROAD COMPANY v. COMMISSIONERS OF MECKLENBURG.

*Taxation—Railroads.*

The franchise of the Atlantic, Tennessee and Ohio railroad company is subject to tax. It is a distinct species of property from that enumer-

9

ated in the clause of the charter exempting the road-bed, &c., from taxation for a limited period.

(*Bank* v. *Charlotte*, 85 N. C., 433; *R. R. Co.* v. *Brogden*, 74 N. C., 707; *Belo* v. *Com'rs*, 82 N. C., 415; *R. R. Co.* v. *Com'rs*, 84 N. C., 504, and 72 N. C., 10, cited and approved.)

Motion by plaintiff company for an injunction heard at January Special Term, 1882, of Mecklenburg Superior Court, before *Bennett, J.*

The court refused to grant the motion, and dissolved the restraining order theretofore made, and the plaintiff appealed.

*Messrs. Jones & Johnston*, for plaintiff.
*Messrs Burwell & Walker*, for defendants.

Smith, C. J.    The case presents the question whether the plaintiff company is liable to be assessed for state and county taxation upon the value of its corporate franchise and road-bed ; and the facts set out in the complaint and answer, used as affidavits on the motion for an interlocutory injunction, and the only evidence in the case, are as follows :

The general assembly of Tennessee in February, 1852, passed an act incorporating the Atlantic, Tennessee and Ohio railroad company, for the purpose of constructing a railroad from the waters of the Atlantic to the Ohio river, traversing the states of North Carolina, Tennessee, Virginia and Kentucky (to accomplish which the concurring legislation of the other named states was necessary and expected), the 37th section of said act being in these words :

Be it further enacted, that the president, directors, clerks, agents, officers and servants of said company shall be exempt from military duty, except in cases of invasion or insurrection, and shall also be exempt from serving on juries and working on public roads; and the capital stock of this company shall forever be free from taxation ; the road with

all its fixtures and appurtenances, including workshops, warehouses and vehicles for transportation, shall be exempt from taxation for the period of twenty years from the completion of said railroad, and no longer. The company shall have full power and authority to purchase and own such number of shares as may be necessary for the construction of said road and keeping the same in repair, which shall likewise be exempt from taxation.

This enactment is recited in words in the act of incorporation passed in this state, and which took effect on February 15th, 1855, and it is therein declared: "That the said Atlantic, Tennesse and Ohio railroad company shall be a body corporate in this state, and, with the powers and privileges in said act of incorporation granted, shall also have power to extend their railroad to some point on the North Carolina Western railroad, or to some point on the North Carolina railroad."

The fifth section (omitting such others as are not deemed material in this inquiry) allows the company five years in which to begin the gradation, and fifteen years in which to finish the road and put it in operation. Acts 1854–'55, ch. 227.

It being found difficult, if not impracticable, to carry out the original enterprise and construct the road in its entire length as contemplated, at least in any reasonable time, and to ensure the building of a portion of it in this state, the general assembly of the state in February, 1861, passed what in its title is denominated "an act to amend" the act of incorporation, therein incorporating the stockholders residing in North Carolina, "under the name of the Atlantic, Tennessee and Ohio railroad company in North Carolina," distinguishing the new from the old company by adding to the corporate name the concluding words "in North Carolina."

We had occasion to consider in another aspect the effect

of this legislation upon the rights and liabilities of dissenting stockholders, and declared our opinion to be that the amending statute, if not an abrogation and substitution of another company in place of the former, nevertheless " effects such fundamental changes as are equivalent in their legal consequences." *Bank* v. *Charlotte*, 85 N. C., 433.

The act creating the new organization and suspending the exercise of corporate functions by its predecessor, until the road proposed to be built under its provisions shall extend to and intersect the East Tennessee and Virginia railroad, does not undertake to confer or define the powers and rights necessary to the accomplishment of the purpose for which it was formed, nor mention the privileges and benefits to be secured by an investment of funds in the prosecution of the work, since it is manifest the legislature intended that their own citizen stockholders and the new organization should retain and enjoy all such as are bestowed in the original act upon them and their associates, as inducements to build a road of larger extent. The new therefore must succeed to all the privileges and immunities conferred in the original charter, in like manner as to the powers necessary to the prosecution of the work.

If the present company had been successful in constructing the road to the Western limit mentioned, and having thus fulfilled the purposes of its existence, then give place to the revived company, it is plain the latter could claim the privileges and exemptions provided in its charter, the law of its being, and it would be a strained interpretation of the legislative will as expressed in the successive acts, whereof one is always mentioned as an amendment of the other, that those granted to all the stockholders in the former should be denied to its own resident stockholders in the latter, when perhaps even greater inducements were necessary to secure contributions of money towards the con-

struction of the road. The public interest in the enterprise is shown by its two subsequent acts, authorizing an assessment upon the shareholders to raise means in furtherance of it, and again providing for an exchange of state bonds for those of the company to the amount of two millions, upon which to raise needed funds for the work. Private Acts 1868, ch. 20. Acts 1868-'69, ch. 31.

Our opinion then is that the 37th section in the Tennessee act of incorporation, already recited, enures to the benefit of the plaintiff as it did to the benefit of the original company, and that it is entitled to the exemptions therein provided.

2. The next inquiry is as to the extent of the exemption from liability to taxation:

The complaint states that the present road was finished in 1862, and it would seem, as further efforts to extend it have ceased, that the period of exemption will expire, *as to it* in twenty years from the time of its completion. Unless this construction be adopted, the liability might never arise and exemption continue indefinitely because the whole road described in the act has not been built. The road between its present termini *is completed*, and as such its exemption ought to expire and we think does expire under the act in twenty years thereafter, to-wit, in 1882.

It is not necessary to consider whether the exemption begins at the completion of the work and continues thence for the limited time, or may also be claimed during its progress, the end of the work being referred to only to measure the period when the exemption must cease. It can scarcely be admissible to impute to the legislature a purpose to burden and embarrass an enterprise in course of execution, and wholly unremunerable, when public favor and friendliness are most needed, and to remove the burden and exonerate the property when the work is done and the operations of the road may be making a return for the outlay.

It is a more reasonable interpretation that the exemption was intended to be in force from the beginning, and the terms used are to fix the period when it shall cease. But the assessment now enforced is within the letter of the act and forbidden upon any construction of its terms.

The franchise, however, as a distinct species of property from any enumerated, and not embraced in the words of the section, upon the rule of construction that none of the taxing power of the state will be deemed to have been surrendered unless the intent to do so is manifest upon a fair and reasonable interpretation of the language used, is we think a subject of taxation and not included in the exemption. *Railroad* v. *Brogden*, 74 N. C., 707; *Belo* v. *Commissioners*, 82 N. C., 415; *Railroad* v. *Commissioners*, 84 N. C., 504; *Railroad* v. *Commissioners*, 72 N. C., 10.

The collection therefore of so much of the tax as is levied upon the road-bed should have been restrained by the court, while the sheriff should be left free to collect that imposed upon the franchise, the value of which is apportioned to the county, under the "act to provide for the levying and collection of taxes." Act 1881, ch. 117, § 11.

. There is error as specified, and this will be certified to the end that a modified order of injunction may be made in conformity with this opinion, and the cause proceed in the court below.

Error.                                   Modified.