### Kansas Pacific Railway Co. v. J. W. Russell, *Sheriff, et al.*

1. INJUNCTION; TAXES; *Irregularities.* Courts of equity will not interfere to restrain, by injunction, the collection of taxes, when the property is subject to taxation, the tax legal, and the valuation not excessive, simply because of irregularities in the assessment.

2. ASSESSMENT; *Raising Valuation; Notice.* Before the county commissioners have power to raise the valuation of personalty, notice must be given the tax-payer, and he have an opportunity to show that the valuation returned is correct.

3. ———— Where the county clerk mingles real estate and personalty in his assessment of railroad property, before the county commissioners can raise such valuation they must take all the steps necessary to give them jurisdiction in regard to both real and personal estate.

*Error from Saline District Court.*

INJUNCTION brought by the *Kansas Pacific Rly. Co.* to restrain the collection of taxes levied on an assessment of their property in the year 1868. At the time of the assess-

ment the name of the company was "Union Pacific Railway Co., Eastern Division." The collection of the taxes having been stayed until July, 1870, the defendant *S. Amrine,* county treasurer, issued his warrant to the defendant *J. W. Russell* as sheriff, as required by § 123 of the tax law, commanding said sheriff to levy the amount of such unpaid taxes, ($17,322.25,) and the penalty thereon, together with his fees, etc., of the goods and chattels of the Railway Company, etc. A temporary injunction was granted. The action was tried upon an agreed statement of facts, at the May Term, 1871, when the court dissolved the temporary injunction, dismissed the plaintiff's petition, and rendered judgment for costs in favor of the defendants. The Railway Company bring the case here. The opinion contains a sufficient statement of the facts.

*McClure & Humphrey,* for plaintiff in error:

1. The proceedings of the officers concerned in the assessment, listing and levy of the taxes, in this case, were so irregular that no legal or valid tax, or public charge, could be imposed upon the plaintiff by them. It is not necessary that the property sought to be subjected to the payment of the tax, was not in fact taxable, to invoke the equitable interference of the court. If the proceedings of the officers who were concerned in the assessment and tax levy were so irregular and illegal as to render the sale to enforce the collection of the taxes void or voidable, an injunction to prevent the sale is the proper remedy: 9 Wis., 402; 10 id., 242; 3 Ohio, 73; 9 Wheat., 738; Blackw. Tax Titles, 485; Civil Code, § 253.

2. No assessment of property of the plaintiff in Saline county for 1868, upon which these taxes were levied, was in fact made. A paper is incorporated in the record, which it is assumed contains an assessment of railroad-bed, track, water and wood stations, moneys, credits, cars and locomotives said to belong to the plaintiff; but an examination of the paper will show that it bears but a slight resemblance to a listing and assessment of property for taxation.

The tax law, (ch. 107, § 36,) provides that the real property

within the county, listed and assessed for taxation, shall be returned in tabular form in a book to be prepared by the county clerk for that purpose; this statement is on a separate slip of paper. The oath attached to the statement simply verifies it as containing a true description of the quantity of property, and does not, as the law requires, verify it as embracing a correct description of the property and a true valuation thereof. The statement is made jointly by the deputy assessor and county clerk. The law nowhere provides that the county assessor and county clerk shall jointly make an assessment of property for taxation.

3. If said statement was intended as an assessment of plaintiff's property, then it does not appear therefrom at what rate the *real* property was valued, and at what amount the *personal* property was valued. But the county board of commissioners, at their meeting in July, 1868, raised the aggregate assessment from $320,000 to $512,000; and it is evident that they raised the valuation of both real estate and personal property, for they were both returned in one aggregate, and the aggregate valuation was raised. No notice was given to the plaintiff of the intended action of the commissioners as is required by § 65 of the tax law, and their action was illegal: Blackw. Tax Titles, 213, 214.

*J. G. Mohler*, county attorney, for defendants in error:

1. If the taxes are *illegal*, injunction is no doubt a proper remedy under § 253 of the code: 5 Kas., 366. But here the taxes are *not* illegal. "Irregularities" are complained, but they do not vitiate the tax. The property was subject to taxation, and it was assessed by the proper officers: Gen. Stat., ch. 25, §§ 53, 76, 77; ch. 107, §§ 29, 31, 32, 33, 53, 54, 55. Irregularities in the assessment will not render the taxes void: 7 Kas., 210.

2. The county commissioners had the power to raise the valuation, that is, to equalize it with other property. The record shows that it was the *real* property which was raised, thus: "The board raised the assessment on *railroad track*,

*bed, etc.*, from $10,000 to $16,000 *per mile*"—clearly showing that the valuation of the personal property, if there was any, was not raised.

The opinion of the court was delivered by

BREWER, J.: This is an action to restrain the collection of taxes. It was brought in the district court of Saline county, and upon final trial there judgment was rendered for defendants. The taxes were levied for the year 1868, and their collection was stayed for two years by an injunction from the U. S. courts granted on the application of some of the stockholders of the company plaintiff. That suit was dismissed, and thereupon the c efendants, as officers of Saline county, were preparing to enforce the collection when this action was brought.

In the case of the *Mo. River, Ft. Scott & Gulf R. R. Co. v. Morris*, Treasurer Bourbon county, 7 Kas., 210, this court had under consideration the question under what circumstances an injunction should be granted to restrain the collection of taxes, and the conclusion reached was that "irregularities in the assessment made by the county clerk will not render the taxes founded upon such assessment void, and that a court of equity will not set aside such a tax, nor grant an injunction to restrain its collection, unless its collection would be inequitable and unjust, and the party seeking such a remedy must be prepared to do equity." To the rule thus enunciated we adhere, and adhering to it find a solution of most of the questions presented in this case.

It is not pretended that the taxes were illegal, nor that the property assessed was not subject to taxation, nor is there anything in the agreed statement of facts tending to show that the assessment was excessively high, or even approximating the actual value of the property assessed. Under such circumstances it would seem to be grossly unjust to other tax-payers to release this one from the obligation to contribute its proportion to the support of the government which equally protects all. It is claimed that the proceedings to assess and value the property were so different from those required by

law that the whole were void, and that there was in truth no assessment of the plaintiff's property upon which to base the levy of a tax, and also that the raising of the valuation by the board of county commissioners was without authority and void. It is objected to the assessment that the affidavit attached to it is not in the form prescribed by the statute. This is true. The act concerning taxes (Gen. Stat., ch. 107, §§ 37, 63,) gives the forms of affidavits to be attached by assessors to their returns of real and personal property respectively. The affidavit in this case does not conform strictly to either. It is an affidavit that "we have set forth all property which by law we were required to list in behalf of the Union Pacific Railway Co., E. D., according to the best of our knowledge, and have not exceeded the true amount thereof." As long, however, as there is an affidavit which shows that the assessment has been truthfully made by the assessor, even though it does not conform to the letter of the statute, we do not think that a court of equity ought to interfere by injunction. More than that, it may be questionable whether any affidavit is required of the county clerk when he makes an assessment in pursuance of the power conferred by § 53 of the act concerning counties and county officers: Gen. Stat., p. 266. It is further objected that the assessment is made by the deputy assessor and county clerk jointly; that this duty is devolved by the statute upon one or the other separately, and that it is not contemplated that they should divide the responsibility by uniting in discharging this duty. This is unquestionably correct. No joint assessment is provided for. Individual responsibility is sought. But this assessment is the assessment of the county clerk. It is his judgment of the value of the property assessed. That some one else agrees with him as to the value only strengthens the presumption in favor of its correctness. It is not a case where, three acting, the judgment of one may be overborne by the opinions of the other two. We cannot see how the plaintiff suffers wrong when two men, either of whom might make the assessment, agree as to the valuation. Again, it is objected that there is no sufficient description of the property assessed, no

proper distinction between the real and personal property, that the supposed assessment is not entered in a tabular form in a book, but simply returned on a slip of paper, and that it does not purport to be an assessment and list, but is simply a statement of property in the possession or under the control of the plaintiff March 1st, 1868. The agreed statement of facts shows that the following paper was returned to the county clerk in relation to the assessment of railroad property for 1868:

"'Statement of railroad property in the county of Saline, in the possession or under the control of the Union Pacific Railway Company, E. D., liable to taxation March 1st, 1868:— 32 miles of railway, including road-bed, track, bridges, water and wood stations, and apportionment of locomotives, cars of all kinds, but without depot buildings or depot grounds, (wood, office furniture, depot apparatus, and money, which last named articles were assessed separately,) at $10,000 per mile, total value, $320,000.'"

We think there can be little difficulty in reading this as a listing and assessment of the railroad property in that county for taxation. And as the assessment of both real and personal property is made by the same person, and as since 1869 the taxes on them are collected in the same manner, we fail to see how a mingling of real and personal property in one assessment can have prejudiced the plaintiff, or what ground it furnishes for the interposition of a court of equity.

In regard to the raising of the valuation we might, perhaps, with some propriety waive any consideration of it, in this case, for the reason that the record does not show that the plaintiff ever paid or offered to pay the taxes on the basis of the valuation of the county clerk, and it might be time enough after that was done to consider whether the assessment was properly raised. But this application is addressed to a court of equity, and having the necessary parties before us, we have concluded to dispose of all the questions and thus settle the whole matter in difference without further litigation. The assessment as returned includes real and personal property. The valuation was raised by the board of county commissioners from $10,000 per mile to $16,000 per mile. There is nothing to show whether

this increase was on account of the real or personal property. We cannot presume in favor of the county that it was on account of the real. To uphold it it must be shown that all the steps necessary to give the county commissioners authority to act in respect to either real or personal property were taken. Now it has been decided by this court at the present term in the case of the *Comm'rs of Leavenworth Co. v. Lang,* (ante, 284,) that the county board has no power to increase the valuation of personalty without notice to the party "that he may have an opportunity of showing that his statement or return of the assessor was correct." Now the agreed statement of facts, (for this case was tried on an agreed statement of facts, and hence comes before us as it did before the district court,) fails to show the service of any such notice. True, the notice of the meeting of the county commissioners as a board of equalization was published in the county paper, but that board had authority only in reference to realty, and notice of its meeting calls the attention of tax-payers only to such property. The county board raised the valuation of plaintiff's property on the 10th of July, 1868. The agreed statement recites that "Notice was given to the principal accounting officers of the Union Pacific Railway Co., E. D., at St. Louis. Mo., and also to the Sup't of said Railway Co., at Lawrence, Kansas, or at Kansas City, Mo., by the county clerk of Saline county, by mailing to their address, in the fore part of July, 1868, to the following effect: that they should appear and show cause why the assessment upon the railroad track and other realty appurtenant thereto should not be raised by the board of county commissioners for the county of Saline." This is all that there is in reference to notice. It is insufficient. It amounts to no more than the notice in the papers. It respects only the realty; more than that, we are not informed by this agreed statement whether these officers of plaintiff were addressed at the places of their residence or business, or where they could be reached by letter. We cannot take judicial notice of the place where plaintiff has its officers. But again, it does not appear that the notice was given in time. It is said to have been mailed in the "fore part

of July." That is indefinite. Was it before the 10th, the day upon which the valuation was raised, or after? Who can tell? If before, was it mailed in time to enable the officers, after receipt, to reach Saline and make their showing by the 10th? The law requires that notice be given "that he may have an opportunity of showing," etc. No such notice is shown to have been given. It does not appear that plaintiff had any opportunity of showing that the original valuation was correct. Under these circumstances it seems to us that the act of the county commissioners in raising the valuation was without authority and void.

The case will therefore be remanded to the district court of Saline county with instructions that if the plaintiff shall, within such reasonable time as shall be fixed by said court, pay the taxes due upon the basis of the valuation fixed by the county clerk, to-wit, $10,000 per mile, then a perpetual injunction shall be decreed as prayed for, otherwise the judgment heretofore entered in favor of the defendants shall be affirmed. The costs in this court will be divided equally between the parties.

All the Justices concurring.