DANIEL M. ADAMS, *et al.*, v. H. T. BEMAN, *as Treasurer, etc.*

TAXES; IRREGULAR ASSESSMENTS; *Illegal Valuations; Injunction.* In 1870 the laws of Kansas required that all property should be assessed at its true value, and also required that deductions for indebtedness should be from credits only; but notwithstanding these provisions of law, the township assessors for Shawnee county for that year, in pursuance of an agreement among themselves, illegally and intentionally assessed all the personal property in said county, except moneys, credits, and shares in

national banks at only one-third of its actual value, and assessed moneys, credits, and shares in national banks at their full value; and they also illegally permitted the persons whom they assessed to deduct the amount of their indebtedness from their *moneys* and credits. *Held,* that said assessment, though illegally and improperly made, does not render all the taxes founded thereon void, nor does it authorize an injunction to restrain the collection of two-thirds of the taxes levied on moneys, credits, and shares in national banks.

*Error from Shawnee District Court.*

INJUNCTION, brought by *Daniel M. Adams, C. W. Jewell, Julius T. Clark,* and *F. W. Giles,* to enjoin *Beman* as county treasurer, and *Thomas* as sheriff, from collecting certain taxes alleged to be illegal. The petition stated that the plaintiffs were severally the owners of certain personal property subject to taxation in the city of Topeka for the year 1870, as follows:

"The said Daniel M. Adams owned and possessed as aforesaid, besides other property, 390 shares in the Kansas Valley National Bank of Topeka, worth $39,000; the said C. W. Jewell so owned and possessed, besides other property, moneys and credits, less his indebtedness and other liabilities, to the amount of $16,000; the said Julius T. Clark, besides other property, so owned and possessed moneys and credits, less his indebtedness and other liabilities, to the amount of $7,112; and the said F. W. Giles, besides other property, so owned and possessed moneys and credits, less his liabilities, to the amount of $16,000."

And the petition alleged that the assessor of the city of Topeka, and the several township assessors, in April, 1870, pursuant to § 36 of ch. 107 of the Gen. Stat., as amended by ch. 120, laws of 1870, met together to agree upon an equal valuation of such property as they might be called upon to assess, and having so assembled, then and there "unlawfully, fraudulently and intentionally agreed to and with each other that they would each of them assess, list, and value all the personal property which they might be called upon to assess, except moneys, credits, and shares in national banks, at one-third of the actual value thereof in money, but that they would assess, list, and value all moneys, credits and shares in national

banks which they might be called upon to assess, at the full and actual value thereof in money;" and that said assessors, and every of them, in accordance with said fraudulent, corrupt and illegal agreement, did assess all taxable personal property for said year 1870, other than moneys, credits, and shares of stock in national banks, at one-third its value in money, and assessed said moneys, credits, and shares of stock at its full value in money; that plaintiffs had paid said county treasurer all the taxes assessed against them respectively upon the valuation of other personal property, and had paid "one-third the amount of taxes levied upon the assessed valuation of the moneys, credits, and shares of stock in national banks owned by them as aforesaid, being an amount equal to that which all other persons were required to pay on the same amount of other personal property." And the plaintiffs prayed that said defendants be enjoined and restrained from collecting the taxes levied upon the other two-thirds assessed valuation of said moneys, credits and shares of stock, as being illegal and void. The defendants demurred to the petition, claiming that it did not state facts sufficient to constitute a cause of action. The case was tried upon such issue at the June Term 1871, when judgment was given for the defendants. The plaintiffs bring the case here by petition in error.

*G. C. Clemens,* for plaintiffs:

1. Are the taxes complained of illegal? Says the supreme court of Massachusetts: "One rule is plain, and well settled, that all those measures, which are intended for the security of the citizen, for securing an equality of taxation, are conditions precedent, and, if they are not observed, he is not legally taxed, and he may resist it in any of the modes authorized by law for contesting the validity of the tax." 21 Pick., 67. See also 3 Ohio St., 15, 19; Cooley's Const. Lim., 521.

In this case those rules "which are intended for the security of the citizen for insuring an equality of taxation," were

grossly violated. The constitution requires that the legislature shall provide for a uniform and equal rate of taxation. To so provide it was necessary to establish some rule for the valuation of property, and this they did in ch. 107, Gen. Stat., and in the amendments of 1869, by prescribing rules for the valuation of property; (articles 4 and 8.) The gist of which rules is that all taxable property shall be assessed at its true value in money; the burdens to be borne are implied by the term "taxation;" and without this uniformity the levy ceases to be a tax, and is merely a forced contribution, determined by the will or caprice of the assessor: 8 Mich., 301; Cooley's Con. Lim., 502; 34 Ill., 203. And if our constitution contained no provision as to uniformity or equality, still they would be parts of taxation: Cooley, 502.

But it is not claimed that the legislature had no power to prescribe the rules for valuation which they have prescribed; and hence, the conduct of assessors in valuing property is to be governed by those rules. Now, if assessors should value *all* the property in a taxing district at one-third its value, the rule prescribed by the legislature would be violated and *the action of the assessors* would be illegal, but the *taxes* would not necessarily be illegal, because no injustice would result to the taxpayer; he would be called upon to pay just as much taxes as he should pay in proportion to others, and no more. The principle of equality aimed at by the legislature would not be violated. 16 Wis., 18. And if the assessor in attempting to value property at its true value, should make mistakes of judgment in regard to the real value of property while attempting to discharge his duties honestly and *bona fide,* by reason of which some would be compelled to pay more than their just proportion of taxes, yet public policy would sustain the tax, because men are fallible and such errors must be expected to occur. But, whenever the assessor *arbitrarily* values some property at one-third of what he knows to be its value while he assesses other property at its full value; where he seeks to ascertain the value of A's property, and having found its value, deliberately divides the amount by

three, and returns the quotient as its value, while he deliberately returns my property at its full value — and all this done intentionally and by premeditation, here no public policy protects the tax, for this is not a mistake of judgment. It is illegal, because the fundamental principle of taxation is violated and I bear more than my just proportion of the public burdens: 10 Wis., 264; 16 Wis., 190; 21 Pick., 79.

2. The assessor also *omitted* property intentionally from taxation. They permitted a deduction of debts from moneys and credits. This has been held to be a violation of a constitution similar to ours. 3 Ohio St., 15, 19. And in Ohio there was a statute authorizing the act. Here even the statute only permits deduction of debts from credits; hence, allowing the deduction from *moneys* and credits is without any authority whatever.

*A. L. Williams*, and *Thomas Ryon*, for defendant:

Counsel for plaintiffs in error confounds the *action* of the assessors with *the law* under which they acted. Their action may have been wrong, but the law is unquestionably constitutional. Laws of 1870, p. 245. The plaintiffs rely upon the rule laid down in Wisconsin, that an intentional omission of taxable property from the assessment roll vitiates the whole tax levied upon such assessment. This might be true if the omission were authorized by law, but not where it is the mere wrongful act of the assessor. The Wisconsin court has receded from its rule. See and compare, 9 Wis., 431; 10 id., 242; 11 id., 35; 15 id., 434.

If the rule contended for by plaintiffs is the true one, all the taxes in the state would be void, and any assessor, by purposely omitting taxable property from his assessment roll, could stop the wheels of government by vitiating all tax levies. All that is necessary is, that the legislative authority under which assessors act shall prescribe uniformity in the assessment and taxation of property ; and then, if the assessor, by his disregard of law, injures any taxpayer, let him respond

4—10 KAS.

in damages to the party injured, precisely as any other officer would have to do for malfeasance in office.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought for the purpose of restraining by injunction the collection of certain taxes claimed to be illegal and void. The questions of law involved in this case were raised in the court below on petition and demurrer. The plaintiffs filed their petition; the defendants demurred thereto, on the ground that the petition did not state facts sufficient to constitute a cause of action; the court sustained the demurrer; and the plaintiffs now bring their action to this court. The plaintiffs alleged in their petition that the said taxes were illegal and void because the assessors of Shawnee county (in 1870) in pursuance of an agreement among themselves fraudulently and intentionally assessed all the personal property in said county except money, credits, and shares in national banks, at only one-third of its actual value, while they assessed moneys, credits and shares in national banks at their full value. And it is also alleged that said taxes are void because the said assessors permitted the persons assessed to deduct the amount of their indebtedness from their moneys and credits. The plaintiffs however seem to rely principally if not entirely upon the former, and not upon the latter proposition, as invalidating the taxes. The plaintiffs claim that said fraudulent and unequal assessment destroyed all uniformity and equality in the taxes founded thereon, and therefore that the said taxes must necessarily be void. They claim that persons owning money and national bank stock (among whom are themselves,) cannot be compelled to pay three times as much taxes on the same amount of property as persons who may happen to own dry goods, groceries, liquors or other kinds of personal property. It seems to be supposed that all the authorities, cited by either counsel, which have any application to this case, sustain the view of the law taken by the plaintiffs in error. We do not think they do however. For instance, see the

following authorities cited by plaintiffs in error: *Exchange Bank v. Hines*, 3 Ohio St., 1, 35, 50; *Williams v. School District*, 21 Pick., 81; *Dean v. Gleason*, 16 Wis., 1, 18. The plaintiffs in error seem to rely principally upon the Wisconsin cases; but if they will read the following decisions in Wisconsin they will find that the Wisconsin courts have not adhered much more closely or rigidly to the rules of uniformity and equality in taxation than other courts have done: *Kneeland v. The City of Milwaukee*, 15 Wis., 454; *Milwaukee & Miss. Rld. Co. v. Supervisors of Waukesha*, 9 Wis., 431. And considering the conflict in the decisions in Wisconsin upon this subject, such decisions cannot be of very much weight on either side. We have not been referred to any authorities by the defendants in error as sustaining their side of the question, and we have not taken the time or the trouble to hunt for any, and therefore it must not be inferred that there are no such authorities, or that there are not many such, simply because we have not cited them. See however the authorities already referred to: 3 Ohio St., 1, 31, 50; 21 Pick., 81; 16 Wis., 1, 18; and *Watson v. Princeton*, 4 Metc., (Mass.,) 599; *Page v. City of St. Louis*, 20 Mo., 136; *Ins. Co. v. Yard*, 17 Penn. St., 331, 339; *State v. Collector of Jersey City*, 4 Zabriskie, 108, 120, 121. In 1870, when this assessment was made, there was an assessor for each township in the state. (Gen. Stat., 1036, §51; Laws of 1869, page 11.) These assessors assessed all the property, both personal and real, within the state, except such as was exempt by law from taxation. (Laws of 1869, page 241.) All this property should have been, as is claimed by the plaintiffs in error, assessed at its true cash or market value. (Gen. Stat., 1025, §15; Laws of 1869, p. 242, §37 as amended; Gen. Stat., 1040, §63.) And upon this assessment all the taxes in the State for all purposes (except street assessments, etc.,) were levied. (Gen. Stat., 1043, 1044, §§69 to 75; Gen. Stat., p. 1086, §22, p. 926, §53.) Therefore if any portion of any man's taxable property was assessed at more or less than its true value, or if any portion of any man's taxable property was omitted from the assess-

ment list, or if any property exempt from taxes was put on
the assessment list, such assessment would not only tend to
destroy uniformity and equality, with reference to taxes, as
between such person and his neighbor living in the same
school district, or township, but it would tend to destroy
uniformity and equality with reference to all state taxes as
between him and every other man in the state. If any man's
property in Shawnee county was assessed at less than its true
value, so that these plaintiffs had to pay more taxes in pro-
portion to the value of their property than this man had to
do in proportion to the value of his property, then every
other man in the state whose property was assessed at its true
value had to pay more taxes in proportion to the value of his
property than this man had to do in proportion to his.
Hence it necessarily follows, that if the taxes against these
plaintiffs are void, because of the violation of the rules of
uniformity and equality, the state taxes against every other
man in the state must also be void. But it is not contended
that a mere violation of the rules of uniformity and equality
in the assessment of property will, in and of themselves,
vitiate the taxes. No authority has been cited, and probably
none could be cited, showing that an accidental omission of
property from the assessment list, or an accidental valuation
of property at more or less than its true value, has worked
or would work an invalidation of all the taxes. Even the
Wisconsin decisions, cited and relied on by the plaintiffs in
error, admit that such an omission or such a valuation would
not render the taxes void. It is even admitted that the
illegal valuation of property at only one-third of its true
value would not invalidate the taxes founded thereon if all
the property was so illegally valued or assessed; for then the
proportion of taxes that each person ought to pay would still
be preserved. (*Dean v. Gleason*, 16 Wis., 2, 18.) It is only
where the rules of uniformity and equality have been inten-
tionally violated, that it is claimed that the taxes will be void.
Now this distinction is not very philosophical. The effect is
precisely the same, whether the violation of said rules be

intentional or accidental. In the payment of taxes no one could tell the difference. If a man is assessed more than his just proportion, it makes no difference in the amount of his taxes whether such assessment was made accidentally, or intentionally. If a county, township, or any municipal corporation, should, in raising revenue for itself alone, fraudulently or intentionally attempt to collect more taxes from one species of property in proportion to its value than from another, or to collect more taxes on the property of one man in proportion to its value than on that of another, there would seem to be some reason for making the distinction as against such county, township, or municipal corporation, and for declaring the whole of the taxes void. Or if the assessor was the mere agent of such county, township, or municipal corporation, and with or without express authority therefrom should intentionally make an erroneous assessment so that uniformity and equality in the taxes would be destroyed, there would seem to be some reason as against said county, township or municipal corporation for making said distinction, and for declaring the taxes void. But the assessor is not the mere agent of any county, township, or municipal corporation, or any other body of men. He acts for the entire people of the state, and they cannot be responsible for his willful acts any more than for his accidental omissions of duty. The assessors of Shawnee county may however have supposed that they were the agents of Shawnee county, and may have assessed the property of Shawnee county at one-third of its value for the purpose of relieving the people of said county from paying their just proportion of the state taxes. But whether they supposed so or not, it does not now seem very equitable, after the people of Shawnee county have thus been relieved from paying taxes on two-thirds of the value of nearly all the personal property of that county, that they or any portion of them should now be relieved from paying taxes on the balance of said property. The plaintiffs have not presented the question so that we could declare void (if such were the law) the

county taxes for Shawnee county, or the township, school-district, or other taxes in and for Shawnee county, and still declare the state taxes to be valid. But they have so presented the question that if we should declare any tax void we must necessarily declare the whole of the taxes void, state taxes as well as county and other taxes. Therefore if the plaintiffs in this action are entitled to the relief they ask, then it necessarily follows that every other taxpayer in the state, outside of Shawnee county, is entitled to be relieved from paying all of his state taxes. For it must be presumed that all the property in all the other counties of the state was assessed at its full and true value; for such is the requirement of the law. It cannot be supposed that the assessors of any other county in the state would intentionally violate the law (as the plaintiffs in this action have charged the assessors of Shawnee county with doing,) by assessing property at only one-third of its true value. In 1870 there were nearly four hundred different assessors in this state. Now will it be contended that all the state taxes for that year, in every part of the state would necessarily be void, if any one of these four hundred assessors had intentionally omitted to assess any one article of taxable property, or had intentionally omitted to assess some one article of taxable property at its full value? Such would be the logical result of the argument for the plaintiffs in error. If every article of taxable property is not assessed, and if every article is not assessed at the same proportionate value with reference to its true value, the rule of uniformity and equality contended for is violated. We cannot think however that in all such cases the taxes must necessarily all be void.

Before closing this opinion it would perhaps be proper for us to say that the township assessors of Shawnee county probably made the said agreement to assess said personal property at only one-third of its value under a construction of their own of § 36 of the tax law, (Laws of 1870, page 245.) It is scarcely necessary for us however to say that if the assessors did construe said section as giving them the

authority to make such an assessment as they agreed to make, and did make, they strangely misconstrued the law. But still they must have so construed said section, for it cannot be supposed that they willfully intended to violate the law. That section means that the assessors shall meet and compare their various views and notions with regard to the values of all the different articles of property required to be assessed, and then from these various views and notions agree upon what should be the true and correct values of all said articles of property, and then establish such values as the basis of the valuation of the property that they might be called upon to assess.

After a careful consideration of this case we have come to the conclusion that the said assessment of personal property in Shawnee county for the year 1870, though illegally and improperly made, does not render all the taxes founded thereon void, nor does it authorize the injunction prayed for by the plaintiffs to restrain the collection of two-thirds of the taxes levied on moneys, credits, and shares in national banks. The judgment of the court below on the demurrer must therefore be affirmed.

All the Justices concurring.