L. C. CHALLISS *et al.* V. T. J. RIGG, *as Treasurer of Atchison County, et al.*

1. COUNTY BOARD — *Raising or Lowering Assessment.* Where the board of county commissioners of a county meets as a board of equalization, under the provisions of ¶ 6922, General Statutes of 1889, such board has the right to raise or lower the assessment of any township or any city by its own motion, in order to fairly and impartially equalize the valuation of the real property of the county.

2. INCREASED ASSESSMENT — *No Injunction.* If the assessors of a county agree among themselves to assess all the real property of the county at 25 per cent. of its actual cash value, and some of the assessors of the county return an assessed valuation of their townships at a much less proportion than the basis of agreement of the assessors,

and thereafter the county board of equalization, in order to fairly and impartially equalize the valuation of the real property of the county, raises the assessed valuation of all the land and lots in certain townships of the county to 25 per cent. of its actual cash value, such assessment and equalization will not authorize an injunction to restrain the collection of the taxes levied upon such increased assessment or equalization.

3. COUNTY BOARD — *Meeting and Adjournment.* If the county board of equalization meets on the day appointed by the statute, it has authority to adjourn from time to time to act upon and complete the equalization of the real property of the county. It is not necessary that it shall complete its duties as a board of equalization upon the day appointed by the statute for the meeting.

4. TAX PROCEEDINGS, *Not Invalidated.* The failure of any officer or officers to perform the duties assigned him or them upon the day specified by the statute does not work an invalidation of tax proceedings, if such duties are subsequently fully performed.

*Error from Atchison District Court.*

INJUNCTION to restrain certain tax sales. The opinion states the facts.

*Bailey & Baldwin, J. F. Tufts,* and *Smith & Solomon,* for plaintiffs in error:

1. The order of the board of equalization increasing the assessments in question is *ultra vires.* The board exceeded its authority, and usurped the functions of the assessors. This order is not an act of equalization, but of assessment. Sections 73 and 74, chapter 107, Gen. Stat. of 1889, create and define the duties of the board of equalization. It is not intended that their duties and those of the assessors should conflict. It was not intended that the board should usurp the office of the assessor. And it was well said by this court in *Pomeroy Coal Co. v. Emlen,* 44 Kas. 121, that "an examination of these two sections will disclose that the word 'assessment' is not to be found therein." And again, in the same opinion the court says: "The statutes point out the mode by which both real and personal property are to be assessed, and by whom the assessment is to be made; but nowhere do they in any way authorize the county commissioners, sitting as a board

of equalization, to act as assessors." In the case just cited the board both listed and valued the property assessed. We now assert that the assessor must both list and value the property. If either of his prerogatives is taken from him, then to that extent there has been no lawful assessment. In *Pomeroy Coal Co. v. Emlen*, 44 Kas. 121, this court has indicated its views of the duties of the board of equalization. See, also, *Suydam v. County of Merrick*, 27 N. W. Rep. 142.

2. This order of the board of equalization is farcical on its face. It is only necessary to read it to discover its insincerity. What possible knowledge could the board have had that every piece and parcel of property in the city of Atchison was assessed 61 per cent. less than the basis agreed upon, or in Shannon township 24 per cent.? This the order presumes. Can it be supposed that they were acquainted with each lot? What wonderful discernment enabled them to arrive at this particular number, 61? Equalizing presumes a comparison. It would puzzle the profoundest philosopher to establish a comparison between the valuations of town lots and farm property. It would give a mathematician the nightmare to figure out how adding 61 per cent. to the total valuation of a precinct would enable him to find a "happy medium." Observe, also, the punctilious care with which the per cent. is figured out. Sixty per cent. would not suffice, it must be 61. Twenty-five per cent. would be too large; it must only be 24. And then, to complete the subterfuge and lend a mock air of justice to the whole farce, the board rebukes poor Walnut township also, saying:

"Nay, if the scale do turn
But in the estimation of a hair,"

and gravely adds 1½ per cent. to its valuation also. And this is called equalization!

3. The order of the board of equalization upon which the increase of valuation is made is invalid and unlawful on its face. Gen. Stat. of 1889, chapter 107, § 74; *Shawnee County v. Carter*, 2 Kas. 128; *Schettler v. City of Fort Howard*, 43 Wis.

48; *Hersey v. Board of Supervisors*, 37 id. 75. The order of the board of equalization, which is now brought in question, says in plain language that these per cents. are added to the valuation of the real estate in the city and townships named in order that they may be "assessed upon the basis of 25 per cent. of actual cash value," as agreed upon by the assessors.

It has been claimed that, by the authority of *Gillett v. Treasurer of Lyon Co.*, 30 Kas. 166, this order should stand, because it was an attempt to enforce an agreement "upon an equal basis of valuation." To this it is sufficient to answer, that there can be no equal basis of valuation for real estate except "the true value in money." Section 58 of the chapter on taxation, under the supposed authority of which the board presumes to make this order, applies only to personal property, and the board, in attempting to enforce the equal basis of valuation adopted by the assessors, if any was adopted, countenanced an attempt to do that which the assessors could not do. Neither will the decision of this court in the case of *Adams v. Beman*, 10 Kas. 38, save this order. In that case the plaintiff's property was assessed at its true value in money.

4. The fourth reason urged for a reversal of the ruling of the district court sustaining the demurrer is, in substance, that the raise of 61 per cent. in the valuation of city property made the valuation of such property excessive and unjust, as compared with the real estate of the county of Atchison outside of the city, and is an unjust discrimination against the city of Atchison.

5. The order of the board pretending to sit as a board of equalization, is invalid, because it was not made at the proper time, as indicated by the statute. The statute should be strictly construed. Cooley, Tax., p. 266. When a certain time is fixed by the statute for the meeting of a board of review or equalization, no other time will suffice. Cooley, Tax., pp. 364–6; *Calhoun v. Coe*, 57 N. H. 569.

*W. D. Gilbert*, city attorney, for defendant in error City of Atchison.

*W. T. Bland*, county attorney, for defendants in error other than City of Atchison:

This court has, in several different cases, substantially decided and settled the principles involved in the case at bar. *Fields v. Russell*, 38 Kas. 720; *Ritchie v. Mulvane*, 39 id. 251. Wherein does the first case above cited differ from the case at bar, and why would the order in the former case not be equally farcical on its face with the order in the latter? It may be asserted that the Fields case related to personal property; at least, it was so suggested by opposing counsel in the court below. If so, we reply, in the language of this court, that there can be no difference in principle; "the law as to personal property being now the same as it is in regard to real property." For a full discussion of the right of the board of equalization to raise or lower the valuation of personal and real property, see *Gillett v. Treasurer of Lyon Co.*, 30 Kas. 166, *et seq.* It will be noticed that, in the case just cited, the complaint was that the board of equalization raised the valuation as returned by the assessors of certain townships to the basis of valuation as agreed upon by all the assessors, said agreement evidently being observed by the assessors of those townships which were not disturbed. Precisely the same condition of facts exists in the case at bar.

The Nebraska decision of *Suydam v. County of Merrick*, 27 N. W. Rep. 142, is wholly inapplicable, for the reason that it is based upon a statute which declared that the board of equalization should "in no instance reduce the aggregate valuation of all the townships, precincts and districts below the aggregate valuation thereof as made by the assessors, neither shall it increase the aggregate valuation of all the townships, precincts, or districts, except in such an amount as may be actually necessary and incidental to a proper and just equalization." Id. 144.

Our position is, that in the absence of any limitation upon

county boards of equalization, the legislature plainly intended that such boards might raise (or lower) valuations, although the ultimate effect would result in raising the aggregate valuation, if, in the judgment and discretion of the board, such action were necessary in order to equalize between taxable districts, and at the same time collect the proper amount of taxes, which could not be done if certain townships were reduced in arriving at an equalization.

Plaintiffs in error in their brief quote from *Pomeroy Coal Co. v. Emlen*, 44 Kas. 117, certain extracts, as though applicable to the case at bar; but the language quoted was used by the court in passing upon an action of the board of equalization, whereby the board actually, so the court declared the record of its proceedings and evidence established, added omitted property not listed, thereby making a new assessment, an act clearly unauthorized on the part of the board of equalization. But it is absurd to claim that the action of the board in the case under consideration is of similar character. There was no omitted real estate added, but the valuation of the very real estate which had been listed in the different taxable districts was simply raised, by adding a certain per cent. to the valuation in each district, in order to make the valuations conform to a uniform basis, such an action being of the very purpose and object for which the statute created the board of equalization, and in no sense whatever could such an action be called a new assessment. We not only assert that the Pomeroy case, *supra*, is not against our position, but it unquestionably sustains it and quotes approvingly the Gillett case, *supra*, being one of the cases upon which we strongly rely.

This court, in *Adams v. Beman*, 10 Kas. 44, commenting upon *Dean v. Gleason*, 16 Wis. 2, 18, say: "It is even admitted that the illegal valuation of property at only one-third of its true value would not invalidate the taxes founded thereon, if all the property was so illegally valued or assessed, for then the proportion of taxes that each person ought to pay would still be preserved." In the Adams case, the records showed

that the assessors met and agreed upon one-third value as the basis of valuation for all personal property in the county, except moneys, credits, and shares in national banks, which they assessed at their full value; and, also, that the assessors permitted the persons assessed to deduct the amount of their indebtedness from their moneys and credits. The plaintiffs complained that, as all other property had been returned at one-third its value, they were entitled to enjoin the collection of the taxes on the two-thirds of their property upon which they paid taxes in excess of other personal property in the county. The court held that the plaintiffs could not complain when they had not been assessed beyond the true value of their property.

That the order by the board on June 10, it having met as a board of equalization on June 2, eight days before, and on the first Monday of that month, was made within the proper time, there can be no serious question. The meaning of § 74 of chapter 107 of the General Statutes of 1889 can hardly be made plainer by argument. After providing for a meeting, and for the time, place and duration thereof (not to exceed 10 days), for the equalization of personal property, the statute further says that "they shall," at one of the very meetings theretofore mentioned in the statute, namely, " at their meeting on the first Monday of June in 1886," the last quotation being one entire adverbial clause, and certainly not meaning that the board should commence and complete their action " on the first Monday " alone, but that they, "at their meeting" commencing " on the first Monday of June in 1886," and which might and could continue for the period of 10 days, equalize the valuation of real property of their county, and such equalization shall also be made at their meeting commencing " on the same day of every second year thereafter." Construing the entire section together, we submit that there is nothing therein contained from which counsel for plaintiffs in error can reasonably deduce the conclusion presented in their brief.

" The revenue law requires that the equalization of taxes

shall be made on the second Monday of July, and where it appears that the board met on that day and adjourned from time to time, and acted upon the assessments and equalized thereon, it will be regarded as done at the meeting appointed by law." 1 Desty, Tax., p. 499; *Halsey v. People*, 84 Ill. 89; *Smith v. Nelson*, 57 Miss. 138.

The opinion of the court was delivered by

HORTON, C. J.: This was an action instituted in the court below by L. C. Challiss and a large number of other taxpayers of the city and county of Atchison, in this state, to restrain the sale of certain lots and tracts of land for taxes alleged to have been illegally levied thereon, and to have such taxes so levied declared void. A demurrer was filed to the petition by the defendants for various reasons. At the September term, 1891, the trial court sustained the demurrer, upon the ground that the petition did not state facts sufficient to constitute a cause of action. The plaintiffs excepted, and bring the case here.

It appears from the recitations in the petition, that on Monday, March 3, 1890, at a meeting held by them, the several township and city assessors of Atchison county agreed to assess the real property of the county for the current year upon the basis of 25 per cent. of its actual cash value. On June 10, 1890, a majority of the board of county commissioners, sitting as a board of equalization, believing that the assessors of certain townships and of the city of Atchison had returned the assessed valuation of the lands in their townships and the lots in Atchison at a much less proportion than the basis of agreement made by the assessors, in order to equalize the assessed valuation of lands in the townships and the lots in the city of Atchison, that all might be assessed equally upon the basis of 25 per cent. of the actual cash value as agreed upon by the assessors, directed that the assessed values of lands in Shannon township, for the year 1890, as returned by the assessor of the township, be increased 24 per cent.; that the assessed values of lands in Lancaster township,

for the year 1890, as returned by the assessor of the township, be increased 4 per cent.; that the assessed values of lands in Grasshopper township, for the year 1890, as returned by the assessor of the township, be increased 7½ per cent.; that the assessed values of lands in Mt. Pleasant township, for the year 1890, as returned by the assessor of the township, be increased 5 per cent.; that the assessed values of lands in Walnut township, for the year 1890, as returned by the assessor of the township, be increased 1½ per cent.; that the assessed values of lots in the city of Atchison, for the year 1890, as returned by the assessor of the city, be increased 61 per cent. The county clerk was instructed to add to the value of each tract of land as returned by the assessors of the townships, and to the value of each lot as returned by the assessor of the city of Atchison, the percentage of increase of value as made and determined by the board. To this order, one of the commissioners, Mr. Kiper, objected, and filed his protest, upon the ground that it was unjust, unfair, and inequitable, and not a proper exercise of the equalization power of the board. Under the law as declared by this court, the ruling of the court below cannot be reversed or modified. It was declared in *Fields v. Russell,* 38 Kas. 720, that —

"Where the board of county commissioners meets as a board of equalization, under the provisions of article 11, chapter 107, Comp. Laws of 1885, such board has the right to raise or lower the assessment of any township by its own motion, and without a hearing or evidence upon individual assessments."

1. County board—raising or lowering assessment.

It was said in the Fields case that —

"Counties are divided into commissioner districts, and the board is supposed to know the value of property in the county; and when the commissioners meet as a board and find that some townships have been assessed at a higher rate than others, it is the duty of the board, under this law, to equalize these assessments." See also *Gillett v. Treasurer of Lyon Co.,* 30 Kas. 166; *Ritchie v. Mulvane,* 39 id. 241.

In the Gillett case, Mr. Justice BREWER, speaking for the court, said:

"Prior to 1876 the law was settled that personal-property assessments could not be changed except after notice to the owner. (*Commissioners v. Lang*, 8 Kas. 287; *Railway Company v. Commissioners*, 16 id. 587; *Railroad Company v. Smith*, 19 id. 233.) At the same time the board of equalization had power to correct the assessment of real estate without personal notice to the owner. (*Railroad Company v. Russell*, 8 Kas. 558; *Railroad Company v. Commissioners*, 16 id. 587.) . . .

"In 1876 a radical change was made in the tax law. By § 74 of the tax law of that year, (being chapter 107, Comp. Laws of 1879,) the board of equalization is in terms given jurisdiction over the equalization of the valuation of personal property to the same degree as over real property. .
. . The county board of equalization has power now to change the valuation of personal property, as it has that of real estate, by raising or lowering the same, and the old rule was changed by the legislation of 1876. We may add, in conclusion, that the various assessors of Lyon county met and agreed upon a basis of assessment; that afterward this basis of assessment was ignored by the assessors of certain townships, and that the only action of the commissioners was in raising the assessments in these townships to the basis agreed upon at such meeting. This is simply an additional reason for sustaining the action of the county board."

In *Adams v. Beman*, 10 Kas. 37, the syllabus reads as follows:

"In 1870, the laws of Kansas required that all property should be assessed at its true value, and also required that deductions for indebtedness should be from credits only; but notwithstanding these provisions of law, the township assessors for Shawnee county for that year, in pursuance of an agreement among themselves, illegally and intentionally assessed all the personal property in said county, except moneys, credits, and shares in national banks, at only one-third of its actual value, and assessed moneys, credits and shares in national banks at their full value; and they also illegally permitted the persons whom they assessed to deduct the amount of their indebtedness from their moneys and credits. *Held,*

<div style="float:left">2. Increased as-<br>sessment—no<br>injunction.</div>

That said assessment, though illegally and improperly made, does not render all the taxes founded thereon void, nor does it authorize an injunction to restrain the collection of two-thirds of the taxes levied on moneys, credits, and shares in national banks."

It is forcibly contended in this case, as it was urged in the Adams case, nearly 20 years ago, that as the statutory rule of assessment was disregarded by the local assessors of Atchison county and city, and as the real estate was only raised or equalized at a valuation of 25 per cent. of its actual cash value, this court should not only condemn the conduct of the officers in disregarding their statutory duty, but should also proceed further, and declare the taxes levied upon such assessments fraudulent and void. The allegations in the petition about the "arbitrary, unjust, illegal and unlawful" order and action of the board of equalization are mere epithets, not the statement of specific facts. A pleading is to be construed most strongly against a pleader, and hence the order of the majority of the board of equalization must be construed to qualify or limit the other allegations in the petition, as the order is made a part thereof. The protest of one member of the board is not as effective as the action of the majority. The statute permits a majority of the board of county commissioners, sitting as a board of equalization, to equalize the valuation of real and personal property. (Gen. Stat. of 1889, ¶ 6922.)

The plaintiffs are not entitled to an injunction on the ground that the assessors and the board of county commissioners equalized the value of the property described at less than its true value. Although it is alleged in the petition that the property was returned by the assessor at its true value in money, considering the other allegations and the arguments in this court, it may be assumed, we think, that the property had been assessed at less than its true value. If the property had been actually assessed or equalized beyond its true value in money, a different question would be presented. If we were to decide that the failure of the board of equalization

9 — 49 KAS.

to fix the value of the property in Atchison county and city at its true value in money avoided the taxes levied on the increased valuation, it would logically follow that all the taxes would be invalid on account of the failure of the assessors to comply with the provisions of the statute. (Gen. Stat. of 1889, ¶¶ 6861, 6904.)

While the county officials ought to be censured for a willful disregard of their duties in not assessing property at its true value, yet this court will not invalidate the taxes levied, 4. Tax proceedings, not invalidated. on the ground solely that the assessors intentionally or accidentally assessed property at less than its value. (*Adams v. Beman*, supra.)   Theoretically, it might be said that all taxes ought to be void unless property is valued precisely as the terms of the statute require, but such a construction would be fatal in its consequences and cause "confusion worse confounded."   The serious results of such a ruling are fully stated in the Adams case.   We must look to practical results and not to theories only.   If we were to hold that the taxes levied as alleged in the petition were wholly void, this would not punish the county or city assessors, nor the county commissioners.   It would, however, be disastrous to the people of Atchison in carrying on the financial affairs of such county and city.   If the legislature were to provide for the infliction of severe penalties upon assessors or other officials who willfully disregard their duties, or if the selection of assessors were changed, so that they would be relieved from the influence of those by whom they are elected, and whose property they are required to assess, perhaps the vicious practice now so generally prevailing concerning the low assessment of property might be remedied.   But a decision of this court annulling the taxes levied upon property at less than its true value would be no efficient remedy, and would cause untold complications.   Under such a decision, it might be impossible to collect any taxes within the state.

It is finally contended that the order of the county board of equalization was made on the 10th day of June, 1890, and not on the first Monday of June, 1890, which was the second day

of that month. (Gen. Stat. of 1889, ¶ 6922.) The statute prescribes that the county board of equalization shall meet on the first Monday of June, and "then proceed to equalize the valuation of real property." It appears from the allegations in the petition that the board of equalization did meet on the first Monday of June, 1890, and on the 10th day of June made the order complained of. We think, if the board met on the day appointed by the statute, it had authority to adjourn from time to time to act upon and complete the equalization of the property of the county. (1 Desty on Taxation, p. 499.) It is specially prescribed by the statute relating to assessment and taxation, that "the failure of any officer or officers to perform the duties assigned him or them upon the day specified does not work an invalidation of the proceedings." (Gen. Stat. of 1889, ¶ 6993.)

3. County board—meeting and adjournment.

The judgment of the district court will be affirmed.

All the Justices concurring.