GILSON *v.* MUNSON.

| 114 | 671 |
| 115 | 149 |
| 114 | 671 |
| 135 | ¹321 |
| 114 | 671 |
| 137 | ¹641 |
| 114 | 671 |
| f155 | ²618 |

1. DIVISION FENCES—FENCE VIEWERS—ADJUDICATION—NOTICE OF MEETING—STATUTES.

   3 How. Stat. § 799, providing for an adjudication by fence viewers of the amount due to a land owner from an adjoining proprietor for constructing or repairing a line fence, is not invalid for failure to provide that notice shall be given to the interested parties of the meeting of the viewers, since the requirement of notice is incident to the conclusive character of their findings, and is annexed to the statute by reasonable and necessary implication.

2. SAME—COLLECTION OF AWARD—TAXATION—POLICE POWERS.

   The provision of the statute declaring the sum awarded by the fence viewers a lien on the land where the fence was built or repaired, and providing for the collection thereof as a tax, is a legitimate exercise of the police power inherent in the State.

*Certiorari* to Lenawee; Lane, J. Submitted October 5, 1897. Decided November 17, 1897.

*Mandamus* by Edwin Gilson, administrator of the estate of Cornelius Gilson, deceased, to compel Dale Munson, supervisor of the township of Deerfield, to spread upon the tax roll against the lands of Adolph Knipping an amount awarded by the fence viewers as relator's damages for building a line fence. From an order granting the writ, respondent brings *certiorari*. Affirmed.

The following is a correct statement of the case taken from respondent's brief:

"Cornelius Gilson, the relator, and Adolph Knipping, own and occupy farms in the township of Deerfield. Their farms have been separated for many years by the Chicago & Canada Southern Railroad. Several years ago the Lake Shore & Michigan Southern Railway Company leased the tracks of the Canada Southern, west of Trenton. After it passed into the control of the Lake Shore Company, this part of the line was made no use of, save to store cars, and the courts declared a forfeiture of the right of way. After the forfeiture took place, relator, Gilson, wanted to establish a new line between him and Knipping, and have a fence erected. Trouble arose between them as to where the division line should be located, and Gilson called out the fence viewers. They made a division line, and ordered Knipping to build the part assigned to him within a given time. He failed to construct it within the time limited, so complainant constructed it for him. After completing it, Gilson called upon the fence viewers to appraise the damages. They did so, and complainant demanded of Knipping the amount of damages as found by the overseers. Knipping resisted payment, and the amount was certified to the supervisor, to spread upon the tax roll against the lands of Knipping. The supervisor refused to spread the tax, and relator applied to the circuit court for a writ of *mandamus* to compel him to spread the tax; and, after a hearing thereof, the circuit court granted the *mandamus* as prayed. This court granted a writ of *certiorari* to review the proceedings, upon the application of respondent."

The law under which this proceeding was had reads as follows:

"When any deficient fence built up or repaired by any

complainant, as provided in the preceding section, shall be adjudged sufficient by two or more of the fence viewers, and the value of such repairing or building up, together with their fees, shall be ascertained by a certificate under their hands, the complainant shall have a right to demand, either of the occupant or owner of the land where the fence was deficient, the sum so ascertained. And in case of neglect or refusal to pay the sum so due on or before the first day of the next succeeding October after demand thereof is made, the sum so due shall become a lien on the said land, and the fence viewers aforesaid shall report the same to the supervisor of the township on or before the first day of November next thereafter, who shall cause the same to be spread upon the assessment roll, in a separate column for that purpose, opposite the description of the land owned or occupied by the person or persons neglecting to pay the same, the said tax to be collected in the same manner that other taxes are collected, and paid over to the complainant upon the order of the township board." 3 How. Stat. § 799.

*Westerman & Westerman,* for relator.

*John E. Bird,* for respondent.

GRANT, J. (*after stating the facts*). Counsel for respondent attacks the constitutionality of the law for two reasons:

1. It deprives a man of his property without due process of law.
2. The State has no power to tax except for public purposes.

The sole ground of attack under the first reason is that the statute does not provide for notice to be given of the meeting of the fence viewers to assess the cost of the fence. While it is true that the statute does not expressly provide for notice, yet it does so provide by implication. The decision of fence viewers under this and similar statutes is conclusive. *McKeever* v. *Jenks,* 59 Iowa, 300; *Oxborough* v. *Boesser,* 30 Minn. 1. Courts will assume that the legislature did not intend to deprive parties of their day in court where they might appear to protect

their rights. The legislature undoubtedly understood that these officers would give necessary and reasonable notice of their meetings, and that it was unnecessary to provide for it in the act. The statutes of Maine and Massachusetts are similar in this respect to that of this State. They do not expressly provide for notice, and yet the courts of both States hold that they do by reasonable and necessary implication. *Scott* v. *Dickinson*, 14 Pick. 276; *Harris* v. *Sturdivant*, 29 Me. 366. See, also, 7 Am. & Eng. Enc. Law, 903.

The second reason is not sound. The statute makes the amount of the award a lien upon the land, and provides an inexpensive method to enforce the lien and collect the amount. Obviously, this is not a public tax, and other provisions might have been made for its enforcement. The authority of the legislature over this subject is an exercise of the police power inherent in the State. This method of collecting the award of the officers is authorized under the principle stated by Mr. Justice COOLEY in his work on Taxation (p. 586, 2d Ed.):

"There are some cases in which levies are made and collected under the general designation of taxes, or under some term employed in revenue laws to indicate a particular class of taxes, where the imposition of the burden may fairly be referred to some other authority than to that branch of the sovereign power of the State under which the public revenues are apportioned and collected. The reason is that the imposition has not for its object the raising of revenue, but looks rather to the regulation of relative rights, privileges, and duties as between individuals, to the conservation of order in the political society, to the encouragement of industry, and the discouragement of pernicious employments. Legislation for these purposes it would seem proper to look upon as being made in the exercise of that authority which is inherent in every sovereignty to make all such rules and regulations as are needful to secure and preserve the public order, and to protect each individual in the enjoyment of his own rights and privileges, by requiring the observance of rules of order, fairness, and good neighborhood by all around him."

The judgment is affirmed, and the respondent directed to proceed. Relator will recover the costs of both courts.

The other Justices concurred.