After stating the facts: The Machinery Act (Rev., 5232), being the same as the act of 1901, sec. 69, ch. 7, and all other acts on the subject subsequent thereto, provides that "In all cases where any personal property, chose in action, or any property, except land, liable to taxation, shall have been omitted, or shall be omitted, in any future year from the tax list by the owner or persons required by law to list the same, the board of commissioners shall enter the same on the duplicate of the next succeeding year and shall add to the taxes of the current year the *Page 146 
simple taxes of such preceding year, not exceeding five years, with 25per centum added thereto, in which such personal property as aforesaid shall so have escaped taxation, and the said board of commissioners shall value and assess the personal property aforesaid for those years, and are empowered to examine witnesses and to call for papers to determine the value and to ascertain the persons liable for the tax upon said (201) personal property." This is the only section in the statute concerning or regulating the listing and assessment of personal property omitted from the tax list by the owners. It omits to provide that notice shall be given the owner, or to give him any opportunity to be heard, either before or after the property is listed, valued, and assessed. We have no doubt of the power of the Legislature to provide for the listing, assessment, and taxing of personal property omitted to be listed by the owner as the law requires. Nor do we perceive any reason why it may not be taxed for five or more preceding years if it has escaped taxation so long. These questions have been settled by several decisions of this Court. Kyle v. Comrs., 75 N.C. 445; R. R. v. Comrs., 82 N.C. 259;Wilmington v. Cronly, 122 N.C. 388. It is the settled policy, and so required by the Constitution, that all of the property, including solvent credits, in the State shall be assessed and taxed at its value in money. The method of enforcing this constitutional requirement is left with the Legislature, subject to other provisions of the Constitution securing to the citizen the right to be heard before his property is subjected to taxation. We are also of the opinion that an industrial corporation is liable to pay tax on its solvent credits under such regulations as to the method of listing and assessment as may be provided by law. Of course, the special statutory provision prescribing the mode of assessing the property of banks and building and loan associations is exclusive of all others.
A number of interesting questions are raised by the pleadings upon controverted allegations. In the absence of any finding of the facts, we are unable to discuss or decide them intelligently. There are, however, several questions respecting the procedure in such cases which we think best to dispose of at this time. We would hesitate to give the construction to the statute for which defendant contends. It must be conceded that the provisions of the section in regard to listing, valuing, and (202) assessing unlisted property are painfully indefinite and obscure. While no express power is conferred upon the commissioners after making the assessment to place the list so made in the hands of the sheriff, we think that by a fair construction, in the light of the power conferred in other portions of the statute respecting the regular tax list, such power is given. The courts have so held. "Assessments of escaped property are made nunc pro tunc, and it is immaterial that the regular *Page 147 
periods for making and reviewing assessments, levying the taxes or placing the rolls in the hands of the collection officers have elapsed when they are made, unless the owner is thereby deprived of some constitutionalright or the statute limits the time." 27 A. E. Enc., 700. The qualifying language in this quotation presents the difficulty in this case. If the section stands alone and is to be construed without reference to other sections in the statute, or the universal principle that no property of the citizen may be taken or taxed without an opportunity to be heard before the board of assessors or tribunal having the power to list and assess such property, or before the courts of the State in some appropriate proceeding, we would find it difficult to reconcile it with section 17, Article I of the State Constitution. If, as contended by defendant, section 5233 empowers the board of commissioners, by simply examining the books of the register of deeds, to place upon the tax list any notes or other choses in action secured by mortgage which they may find thereon for five preceding years, and, without notice to the supposed owner, to place a value upon them, assess them for taxation, add the penalty and summarily enforce the payment of such tax and penalty by a sale of the property of the owner, the protective provisions of section 17, Article I of the Constitution would, pro hac vice, be annulled. The power to tax, it has been said (and the truth of the saying too frequently exemplified) is the power to destroy. While the power is essential to the life of the State, its enforcement by constitutional methods and within constitutional limitations is essential to the safety of (203) the property of the citizen. "Proceedings for the assessment of a tax being quasi judicial, it follows that in order to give validity to the assessment, notice thereof should be given to the owner of the property to be assessed." 27 A. E. Enc., 704. The nature of tax proceedings is summary, of necessity. "Every inhabitant of the State is liable, by means thereof, to have a demand established against him on the judgment of others regarding the sum which he should justly and equitably contribute to the public revenues. Every owner of property in the State, whether he be an inhabitant or not, is liable to have a lien in like manner established against his property. Moreover, the persons who make the assessment lighten the burden upon themselves in proportion as they increase it upon others. They must act, to a large extent, upon imperfect and unsatisfactory information, and the danger that, when most honest and fair-minded, they will misjudge and thus do injustice, is always imminent. It is, therefore, a matter of the utmost importance to the person assessed that he should have some opportunity to be heard and to present his version of the facts before any demand is conclusively established against him; and it is only common justice that the law should make a reasonable provision to secure him, as far as may be *Page 148 
practicable, against the oppression of unequal taxation by making theprivilege of being heard a legal right." Cooley on Taxation, 625. The learned author proceeds to say, and the importance of the subject, in the light of the loose and unsatisfactory provisions is our revenue laws, justifies the quotation, at some length: "In substance, the question will be whether the right to be heard in tax cases is a constitutional right and indefeasible. Upon this subject there is a general concurrence of authorities in the affirmative. It is a fundamental rule that, in judicial or quasi judicial proceedings affecting the rights of the citizen, he shall have notice and be given an opportunity to be heard before any (204) judgment, decree, order, or demand shall be given and established against him. Tax proceedings are not, in the strict sense, judicial, but they are quasi judicial, and, as they have the effect of a judgment, the reasons which require notice of judicial proceedings are always present when the conclusive steps are to be taken. Provision for notice is, therefore, part of the `due process of law' which it has been customary to provide for these summary proceedings; and it is not to be lightly assumed that constitutional provisions, carefully framed for the protection of property rights, were intended or could be construed to sanction legislation under which officers might secretly assess the citizen for any amount in their discretion without giving him an opportunity to contest the justice of the assessment." Cooley, 628. The text is illustrated and supported by an abundance of authority from both State and Federal courts. No case is cited from this State, because no attempt, so far as records show, has been made to disregard in practice a truth so manifest and fundamental. It is held that, if possible, statutes will be so construed as to require notice. Kansas v. R. R., 8 Kan. 558; Baltimore v.Grand Lodge, 60 Md. 280; Gibson v. Munson, 114 Mich. 671. Section 5235 makes provision for the equalization of values after notice. This, however, refers to the regular tax list, and the time is fixed for making such equalization. Section 5236 provides for complaints by owners of property for improper valuation. This, of course, applies to property which has been listed by the owner. If he has no notice that claim is made, that he has omitted to list his property, and it is summarily listed, valued, and assessed, and the list, with the force and effect of a judgment and execution, given to the sheriff, how is he to make complaint — how is he to know until the "conclusive act is completed" either that his property is assessed or the value put upon it? We are clearly of the opinion that either the assessment is void and should be so declared, or (205) that the plaintiff should have an opportunity to contest all of the questions in the court which would have been open to it if notice had been given at the inception of the matter. In view of the many and more or less difficult questions raised upon the pleadings regarding the *Page 149 
liability of the notes to taxation by reason of the peculiar facts relating to their execution, etc., and the manner in which they should be assessed, if liable, the parties should be permitted to litigate them in this action. The necessity for giving notice to owners of choses in action before assessment is manifest. It by no means follows that every note secured by mortgage is solvent to the extent of its face value, or that the full amount is due. Payments may have been made upon it. Again, "All bona fide
indebtedness owing by any person may be deducted by the tax lister from the amount of said person's credits." Section 5227. If all of the notes, bonds, and other choses in action appearing upon the register's books for five preceding years are to be regarded as solvent credits and listed at their face value, and if such listing and valuation is "conclusively correct," having the "force and effect of a judgment and execution," the question of securing revenue for the State and counties would be solved, but possibly the rights of the individual citizen would be sacrificed. For even so desirable a purpose the end would hardly justify the means. If the plaintiff corporation had, during the years 1902 and 1903, a solvent credit for $417,000 subject to taxation which it omitted to list, it should, even at this late day, pay the taxes justly due upon it; but before the fact is conclusively established by a quasi judicial tribunal, full and ample notice should be given and an opportunity to be heard afforded. We have no doubt that the plaintiff is entitled to injunctive relief pending the hearing. Purnell v. Page, 133 N.C. 125. By the same authority the sheriff is the proper party defendant. If for any reason the commissioners think that the rights of the county require, they may be made parties. We take the liberty of suggesting that the Legislature, at its next session, consider the propriety of amending section 5232, Revisal, so that provision be made for notice before the personal property omitted from the tax list be listed, valued, (206) and assessed.
The order of his Honor continuing the injunction is
Affirmed.
Cited: Kinston v. Loftin, 149 N.C. 256; Land Co. v. Smith, 151 N.C. 72;Sherrod v. Dawson, 154 N.C. 528; Guano Co. v. New Bern, 172 N.C. 260. *Page 150